BRYAN SCHWARTZ LAW
Bryan Schwartz (SBN 209903)
Logan Starr (SBN 305598)
1330 Broadway, Suite 1630
Oakland, CA  94612
Telephone: (510) 444-9300
Facsimile:  (510) 444-9301
Email: bryan@bryanschwartzlaw.com
        logan@bryanschwartzlaw.com

*Attorneys for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| TREVOR JOHNSON and SAMANTHA HARMON, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>  vs.<br><br>QUANTUM LEARNING NETWORK, INC., a corporation, doing business as SuperCamp; and DOES 1-50,<br><br>        Defendants. | Case No. 5:15-cv-05013-LHK<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES**<br><br>Complaint Filed: October 30, 2015<br><br>Date:  August 11, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 8 (4th Floor) |

1      **NOTICE OF MOTION AND MOTION**

2   **TO THE COURT AND ALL INTERESTED PARTIES:**

3          **PLEASE TAKE NOTICE** that a hearing will be held on this Unopposed Motion for

4   Preliminary Approval of Class Action Settlement of Plaintiffs Trevor Johnson and Samantha

5   Harmon ("Plaintiffs") regarding their proposed settlement with Defendant QLN ("QLN," together

6   with Plaintiffs, the "Parties"). The hearing will be held on August 11, 2016, at 1:30 p.m. in the

7   Courtroom of the Honorable Lucy H. Koh, located at 280 South First Street, San Jose, CA 95113.

8   At the hearing, the Parties will request that the Court: (a) preliminarily approve the Settlement;

9   (b) certify the proposed classes, for settlement purposes only; (c) name Bryan Schwartz Law as

10  Class Counsel, and Trevor Johnson and Samantha Harmon as Class Representatives; (d) name

11  Rust Consulting as Claims Administrator; (e) approve the Class Notice to be sent to the

12  Settlement Class, and (f) and schedule a final approval hearing date.

13         The Motion is based upon the Unopposed Motion for Preliminary Approval of Class

14  Action Settlement and Certification of Settlement Classes and the Memorandum of Points and

15  Authorities in support thereof; the Declaration of Bryan J. Schwartz, Esq., in support of the

16  motion, and the exhibits thereto, including the Settlement Agreement and the Proposed Notice to

17  the Class; the Declarations of Trevor Johnson and Samantha Harmon in support of the motion; all

18  other exhibits and attachments submitted in support of the Motion; any oral argument of counsel;

19  the complete files, records, and pleadings in the above-captioned matter; and such additional

20  matters as the Court may consider. A Proposed Order is submitted herewith.

21

22  Dated: May 23, 2016

23                                  BRYAN SCHWARTZ LAW

24                                  By: _____*/s/ Bryan J. Schwartz*_____
                                          BRYAN J. SCHWARTZ
25
                                         *Attorneys for Plaintiffs*
26

27

28

# TABLE OF CONTENTS

I.      Introduction .................................................................................................. 1

II.     Procedural Background .................................................................................. 2

III.    Factual Background ....................................................................................... 3

IV.     The Proposed Settlement Terms and Factors in Parties' Decision to Settle ............. 4

        A.      QLN's Potential Insolvency .......................................................... 8

        B.      Joint Employer Issue .................................................................. 10

        C.      Arbitration Agreements .............................................................. 10

        D.      "Organized Camp" Exemptions .................................................. 11

        E.      Willfulness ................................................................................ 12

        F.      Interest and Penalties ................................................................. 12

V.      The Court Should Preliminarily Approve the Settlement ........................................... 12

        A.      Class Action Settlements Are Encouraged ............................................. 14

        B.      Plaintiffs Contend that the Settlement Satisfies the Requirements of FRCP 23 and
                the FLSA for Purposes of Settlement. .................................................. 14

                1.      The Class Is Sufficiently Numerous .............................. 14

                2.      There Are Questions of Law or Fact Common to the Class .................. 15

                3.      The Plaintiffs' Claims Are Typical of Class Members' Claims ............... 15

                4.      Plaintiffs Are Adequate Representatives of the Class.............................. 15

                5.      Common Questions of Law and Fact Predominate and Class Resolution Is
                        Superior ............................................................................ 16

                6.      FLSA Class Members Are "Similarly Situated." ...................................... 16

        C.      The Settlement Is Fair, Adequate and Reasonable.................................... 17

                1.      The Settlement Is Non-Collusive and Was the Product of Extensive
                        Negotiations. ................................................................... 17

                2.      No Deficiencies in Settlement Agreement .................................. 18

                3.      No Preferential Treatment; Class Representatives' Modest, Justified
                        Enhancements ................................................................ 19

                4.      The Settlement Falls Within the Range of Possible Approval.................. 21

                5.      Attorneys' Fees of One Third of the Class Recovery Are Justified.......... 23

                6.      The Notice to the Class Is Sufficient.......................................... 24

                7.      The Requested *Cy Pres* Beneficiary Is Appropriate ................................. 25

VI.     CONCLUSION................................................................................................. 25

**<u>TABLE OF AUTHORITIES</u>**

**<u>State Cases</u>**

*Bell v. Farmers Insurance Exchange*, 135 Cal.App.4th 1138 (2006)..............................................12

*Gentry v. Superior Court*, 42 Cal.4th 443 (2007) .......................................................21

*Martinez v. Combs,* 49 Cal.4th 35 (2010) ...................................................10


**<u>Federal Cases</u>**

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) .......................................................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..........................................16, 24

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..........................................................23

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...........................................13

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................................23

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ...............24

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................13

*Criswell v. West Airlines, Inc.*, 709 F.2d 544 (9th Cir. 1983)........................................12

*Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) .....................16, 17

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2013) ...................................................25

*Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331 (D. Nev. Sept. 27, 2013) ...................21

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) .................................14, 15, 16

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) .............................13

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)............................................14

*Garcia v. Bana*, 2013 WL 621793 (N.D. Cal. Feb. 19, 2013) .....................................10

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .............19, 23

*Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373 (N.D. Cal. 2012)................................10

*Hanon v. Dataproducts Corp.*, 976 F.2d 508 (9th Cir. 1992) ......................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..........................................14, 15, 16, 19

*Harris v. Vector Marketing Corp.*, 2011 WL 1627973
   (N.D. Cal. Apr. 29, 2011) ..........................................................12, 13, 17, 19, 21

*Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001 (N.D. Cal. 2010) ...............................17

*In re Bank of America Wage & Hour Employment Litigation*, 2013 WL 6670602
    (D. Kan. Dec. 18, 2013) .........................................................................20

*In re Beef Industry Antitrust Litigation*, 607 F. 2d 167 (5th Cir. 1979)........................17

*In re Bluetooth Headset Product Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ...................24

*In re Omnivision Technologies, Inc.*, 2007 WL 4293467 (N.D. Cal. 2007) ...............................23

*In re Warner Communications Securities Litigation*, 618 F.Supp. 735 (S.D.N.Y. 1985) ..............9

*In Sandoval v. AB Landscaping, Inc.*, 2012 WL 4466585 (N.D. Cal. 2012) ..........................9

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014) .................................23, 24

*Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) .......................................................10

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ................................................8, 9

*Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..............................22

*McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841 (S.D. Cal. 2009) ....................9

*Officers for Justice v. Civil Service Commission of City & County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .............................................................14

*O'Sullivan v. AMN Services, Inc.*, (ECF Nos. 84, 92) (N.D. Cal.)..................................22

*Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064 (2013) ...........................................11

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) .....................................19, 20

*Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d. 425 (9th Cir. 2015) .............................11

*Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753 (N.D. Cal. Jul. 18, 2012) ..............................17

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) .................17, 20

*Singer v. American Airlines Federal Credit Union*, 2006 WL 3093759
    (N.D. Cal. Oct. 30, 2006) ......................................................................23

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) .............................................................13, 19, 23

*Stolt-Nielson S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2009) ............................11

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................................8, 9

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..........................19, 20

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) .........................21

*Velez v. Majik Cleaning Serv.*, Inc., 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................23, 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................15

*White v. National Football League*, 41 F.3d 402 (8th Cir. 1994)...................................24

*Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) ................20

*Wright v. Adventures Rolling Cross Country, Inc.*, 2013 WL 1758815
   (N.D. Cal. Apr. 24, 2013) ........................................................................11, 12

## Statutes, Regulations, and Other Sources

29 U.S.C. §206 *et seq.* "Fair Labor Standards Act"............................................. *passim*

29 U.S.C. §255(a) ......................................................................................12

California Labor Code § 1182.4............................................................................11, 15

Federal Rule of Civil Procedure 23............................................................................14, 15

*Manual for Complex Litigation, 4th* § 21.632 (2007) ..................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a wage-and-hour class-and-collective action against Defendant Quantum Learning Network, Inc. ("QLN"), brought by employees of its SuperCamp programs. Each SuperCamp program is an 8-10 day residential academic program that teaches study skills, confidence, and motivation to students from middle school to early college. SuperCamp programs are housed on various university campuses where QLN rents facilities, including, for example, Stanford University and Wake Forest University. In this unopposed motion, the Plaintiffs seek preliminary approval of a settlement of this matter in the amount of $400,000 on behalf of approximately 410 employees who worked at these summer programs.

There have been no prior cases deciding whether employees of academic summer camps on college campuses are exempt under the state and federal camp counselor wage law exemptions or not. Plaintiffs and Defendant each vigorously maintain they could have prevailed as to the exemptions if the matter had been adjudicated to conclusion. In the meantime, Plaintiffs would have to survive Defendant's motion to compel Plaintiffs to individual arbitration and win collective and class action certification – also risky propositions for the class members.

SuperCamp has been run for decades by its two owners, Roberta DePorter and Joseph Chapon. The company has little to no assets – it has been losing money for years – but to avoid financial destruction of their small but beloved business, the owners are personally withdrawing the funds from their retirement to pay this settlement, and have executed a lien against their personal residence to secure the deal. Absent this arrangement, and a compromise that they could personally fund, the class would be left with no relief and the business would likely shut down. Plaintiffs might be unable to attach liability to the owners, absent this settlement.

In light of these facts, it is extraordinary that Plaintiffs were able to recover *more for individual class members than many earned during their entire employment* with SuperCamp, and obtain Defendant's agreement to reclassify class members' positions going forward, so that SuperCamp Team Leaders and others will be earning the minimum wage and overtime and receiving meal and rest breaks. The Court should readily grant preliminary approval, and approve the notice, class representatives, and settlement administrator.

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed their class and collective action in this Court on October 30, 2015. (Dkt. #1.) Plaintiffs' Second Amended Complaint, filed on January 27, 2016, alleges ten causes of action: (1) minimum wage violations under the FLSA, 29 U.S.C. § 206; (2) overtime wage violations under the FLSA, 29 U.S.C. § 207; (3) minimum wage violations under California Labor Code §§ 1194 and 1197, and IWC Wage Order(s); (4) overtime wage violations under California Labor Code §§ 510, 1194, and 1198, and IWC Wage Order(s); (5) failure to provide itemized wage statements (Cal. Lab. Code § 226); (6) failure to provide and/or authorize meal and rest periods (Cal. Lab. Code §§ 512 and 226.7, and IWC Wage Order(s)); (7) failure to compensate for all hours worked (Cal. Lab. Code §§ 221 and 223); (8) waiting time penalties (Cal. Lab. Code §§ 201-203); (9) violations of California Business & Professions Code §§ 17200, *et seq.*; and (10) civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code § 2698 *et seq.*) ("PAGA"). (Dkt. #27 at 1-2.)

On February 17, 2016, Defendant QLN moved to compel arbitration of the Class Representatives' individual claims, dismiss the class and collective claims, and stay the PAGA claims pending the completion of arbitration. (Dkt. #30 at 1.)

On March 10, 2016, Plaintiffs deposed Ms. DePorter, QLN's President and Co-Owner, as the corporate designee under Fed.R.Civ.P. 30(b)(6). *See* Deposition of Bobbi DePorter, Exh. 2 to Schwartz Decl. ("Deporter Depo.") In advance of mediation, Defendant produced hundreds of pages of company policies, about which Ms. DePorter was questioned extensively at her deposition. Schwartz Decl. ¶4; *see also* DePorter Depo. After the deposition, in aid of the scheduled mediation, QLN informally produced detailed information regarding the potential class members to enable Plaintiffs to formulate a calculation of their damages claim. Schwartz Decl. ¶¶6-7. QLN also provided extensive information concerning the companies' and owners' finances to demonstrate financial hardship that might lead to a bankruptcy filing if this matter were not resolved, including but not limited to tax returns, profit and loss statements, documents concerning real property they own, and retirement account information. Schwartz Decl. *Id.*

On March 24, 2016, the Parties conducted an arms' length, day-long mediation with highly experienced mediator Steve Rottman, Esq, in Los Angeles. Schwartz Decl. ¶5. As a result

of the session with Mr. Rottman, the Parties reached an agreement in principle to resolve the claims in the Second Amended Complaint. *Id.* Based on this agreement agreement in principle, QLN agreed to withdraw its motion to compel arbitration on March 29, 2016. (Dkt. #34.)

After additional negotiation, on April 14, 2016, the Parties signed a memorandum of understanding and, on April 18, 2016, filed a notice of settlement with the Court (Dkt. #35.) On May 20, 2016, the Parties signed the Settlement Agreement. *See* Schwartz Decl., Exh. 1 (Settlement Agreement, hereinafter "*Exh. 1*").

## III.    FACTUAL BACKGROUND

QLN hires over one hundred employees each year for a range of SuperCamp positions, including Team Leaders and Senior Team Leaders, who serve as teaching assistants and around-the-clock childcare providers, and who comprise the majority of the putative class members. (*See* Deposition of Bobbi DePorter, Exh. 2 to Schwartz Decl. ("Deporter Depo"), 115:16-116:13.) QLN also hires Office Coordinators and Logistics Coordinators to staff the camp office, perform secretarial tasks and manual labor, and run errands. (*Id.*, 116:14-117:18.) QLN also hires Wellness Persons to serve the function of a school nurse. (*Id.*, 109:15-25). Employees in these positions earn a stipend of only $425-700 per 8-10 day SuperCamp program, despite working upwards of 14 hours per day. (*Id.*, 105:13-106:23). Several senior positions, *i.e.* Facilitators, Lead Facilitators, Site Administrators, and Site Counselors, received upwards of $1,000 per camp, but were not salaried employees. (*See id.*, 27:15-28:9). Based on QLN's determination that its SuperCamps qualified for the "organized camp" exemptions to the federal and California wage-and-hour laws, no SuperCamp employees have typically been paid overtime or the minimum wage, and California SuperCamp employees have not been provided meal and rest breaks in any systematic way. (*See id.*, 30:4-33:1524, 126:12-20.)

SuperCamp rents facilities at universities across the country, and houses the attendees in the universities' dorms. (*Id.*, 11:1-13:13.) SuperCamp does not focus on outdoor recreational activities in a rustic setting, like a traditional summer camp. (*Id.*, 31:12-15, 98:24-99:19.) QLN does not own and operate any distinct physical establishments, aside from a corporate headquarters and conference center (owned by a separate LLC). (*Id.*, 4:19-5:15.) SuperCamp

employees signed arbitration agreements upon commencing their employment, which made no reference to class arbitration one way or another. (*See id.*, 133:1-134:24.)

The classes, together, encompass all individuals who have been employed by QLN for its SuperCamp programs and paid on a per-camp basis in California from October 30, 2011, to August 20, 2016, and outside California from October 30, 2011, to August 20, 2016 (together, the "Settlement Class") – approximately 410 people. *Exh. 1* at 2-3, Most SuperCamp employees were each paid less than $500 per SuperCamp session (DePorter Depo., 105:13-106:23), but under the Settlement, if approved, class members will be paid on average approximately $540 each. *Exh. 1* at 13-18; Schwartz Decl. ¶10.

QLN has reported to Plaintiffs that it lacks the resources to pay a settlement larger than $400,000 at this time or any time in the near-term, and provided Plaintiffs' counsel with detailed financial records of both QLN and its individual owners to support those assertions. Schwartz Decl. ¶¶6-7. These documents demonstrated to Plaintiffs' counsel that SuperCamp has not been profitable for several years and that there is a strong risk that continued litigation expense will result in QLN declaring bankruptcy. (*Id.*) The ability to eliminate the bankruptcy risk weighed heavily in counsel's decision to agree to the Settlement. (*Id.*, ¶7.)

## IV.    THE PROPOSED SETTLEMENT TERMS AND FACTORS IN PARTIES' DECISION TO SETTLE

In addition to the reclassification of most of the workforce as non-exempt going forward, a very substantial value to the workers (who include many repeat employess, summer after summer), the proposed settlement calls for a payment of $400,000, none of which will revert to Defendants (unless the settlement fails to receive Court approval, or more than 10% of class members opt out), plus all of the employers' share of payroll taxes (as to the latter, *see Exh. 1* at 18-19). From the $400,000 common fund, the settlement calls for:

- the deduction of one-third of the Settlement Amount as attorneys' fees ($133,333.33) – less than counsel's anticipated lodestar fees in the case (*Exh. 1* at 14-15); Schwartz Decl. ¶13;

- reimbursement of litigation costs up to $15,000 (*Exh. 1* at 14-15; Schwartz Decl. ¶14.

- enhancement payments to the Class Representatives of $5,000 each, which undersigned counsel believes is the minimum adequate payment, for the time that the Class Representatives have spent on this matter over the past six months, including reviewing pleadings, assisting in factual investigation, and contacting potential class members, as well as for incurring reputational harm by standing up on behalf of a community of employees who had been unable to assert their rights under the wage-and-hour laws for several decades. *See infra* § V.C.3; *Exh. 1* at 15-16; Johnson Decl. & Harmon Decl., submitted herewith; Schwartz Decl. ¶8).

- an enhancement payment of $1,000 to the one class member who signed an affirmative, opt-in pre-settlement, which undersigned counsel believes is the minimum adequate payment for providing useful factual information concerning SuperCamp programs outside of California and for assuming the reputational and professional risks of attaching her name to the lawsuit. Schwartz Decl. ¶9.

- a payment of $2,250 to the California Labor Workforce Development Agency ("LWDA") in connection with Plaintiffs' PAGA claims (*Exh. 1* at 16).

- an estimated $17,500 in settlement administration fees and expenses to the Claims Administrator, Rust Consulting. *See Exh. 1* at 14. In no event shall such fees and expenses exceed such amount. *Id.*

The remaining amount—which Plaintiffs' counsel estimates to be approximately $221,000 (the "Net Settlement Amount")— will be available to all class members who do not opt out of the Settlement. Each class member's allocation will be based upon: (1) the number of SuperCamp sessions worked by the class member; (2) the class member's job title with respect to each of those sessions worked by the class member; (3) and the location with respect to each of those sessions worked by the class member (specifically, whether the SuperCamp session was held inside or outside of California, since California claims add substantially to the value). With respect to the job title which corresponds to each session worked by a class member, class members who worked as Team Leaders, Senior Team Leaders, Office Coordinators, Logistics Coordinators, and Wellness Persons will be allocated a higher per-camp-session payment (for all camps worked in which the class members held those job titles) in light of the comparatively

lower wages paid to these class members and the comparative strength of their allegations of misclassification, as compared to those better-compensated class members who worked for Defendants as Facilitators, Site Administrators, Site Counselors, and Lead Facilitators. These distributions are thus tailored to reflect the relative value of each class member's claim.

Specifically, class members will be allocated a share of the Net Settlement Amount based on the following formula:

Each class member will receive one (1) share for each SuperCamp program the class member worked as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, or Wellness Person outside of California. *Exh. 1* at 17. Each class member will receive one-and-one-quarter (1.25) shares for each SuperCamp program the class member worked as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, or Wellness Person in California. *Exh. 1* at 17. Each class member will receive a one-half share (0.5) share for each SuperCamp program the class member worked as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator outside of California. *Exh. 1* at 17-18. Each class member will receive a three-quarters (0.75) share for each SuperCamp program the class member worked as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator in California. *Exh. 1* at 18. The value of each share will be calculated by summing the total number of shares allocated to class members as determined above, divided into the Net Settlement Amount, to yield a per-share amount. *Exh. 1* at 18. Any unclaimed funds as a result of uncashed checks will, if approved by the Court, be distributed *cy pres* to the Legal Aid Society-Employment Law Center. *Exh. 1* at 20.

Standard payroll taxes will be taken from one third of each class member's settlement amount received, as wages, and the other two thirds will be paid to each class member with an IRS Form 1099, as interest and penalties. *Exh. 1* at 18.

Because Plaintiffs have concerns regarding QLN's future solvency, Plaintiffs have negotiated for QLN's individual owners to grant Plaintiffs, the class members, and class counsel a security interest in their home, by creating a lien secured by a deed of trust. *Exh. 1* at 12. Such lien may be voided only when QLN transfers the gross settlement amount (plus the employer's share of payroll taxes) to the Claims Administrator, or if the Settlement otherwise does not become final. *Id.* If QLN does not make this payment within one year to the day of the date of

preliminary approval of the Settlement, the Lien shall be enforceable by Plaintiffs on behalf of the class members through class counsel or other authorized representative. *Id.* at 12-13. No portion of the Settlement Amount shall revert to QLN (unless this Agreement is not approved by the Court or it does not become final). *Exh. 1* at 13.

Under the terms of the Settlement Agreement, the Parties request that the Court appoint Rust Consulting, a reputable, professional claims administration firm, which submitted the lowest bid for administration services (Schwartz Decl. ¶15), as the Claims Administrator to mail the Class Notice and perform other required claims administration services. *Exh. 1* at 10. If, by entering the Preliminary Approval Order, the Court provides authorization to send the Class Notice to the Settlement Class, QLN, through the Claims Administrator, will facilitate the mailing of the Class Notice to all class members by sending a list of the last known mailing addresses, email addresses, and phone numbers of the class members promptly. *Exh. 1* at 13. The agreed-upon Class Notice (Exhibit A to the Settlement Agreement) explains the purpose of the Class Notice, and describes the litigation, the terms of the Settlement, and each class member's options with regard to participating in the Settlement. *Id.* The Class Notice also provides information regarding: the consequences of doing nothing; the final approval hearing; and how class members can obtain additional information or opt out of the settlement. *Id.*

Class members may elect to "opt out" of the Settlement Class and thus exclude themselves from the litigation, the Settlement, and the Settlement Class by the claims period deadline. *Exh. 1* at Ex. A §13. Class members who do not timely opt out of the Settlement Class shall be deemed members of the Settlement Class on California claims. Class members who do opt out will not receive a settlement payment, but also will not be subject to the release of claims, and will be deemed never to have participated in the litigation or this Settlement. *Id.* In addition, as explained in more detail in the Class Notice, class members who do not opt out will have an opportunity to object to the Settlement. *Exh. 1* at Ex. A §§ 18-19.

All class members who do not timely opt out of the Settlement will become members of the Settlement Class and, assuming the Settlement is approved by the Court, will be subject to the judgment and its associated release of California claims. *Exh. 1* at Ex. A § 14. Checks sent to class members shall contain a legend on the reverse of the check that states: "Endorsement or

depositing of this check means that you are certifying under penalty of perjury to being a class member in the matter of *Johnson, et al. v. Quantum Learning Network, Inc., et al.*, are participating in the settlement in this case, and are waiving all wage-and-hour claims under the Federal Labor Standards Act and/or California law, as applicable. You may read the full notice and waiver online: http://www.bryanschwartzlaw.com/supercamp." *Exh. 1* at 19-20; *see also id.* at Exh. A §§12, 14-15.

Some of the factual and legal factors considered by the Parties settlement include, among others:

### A. QLN's Potential Insolvency

Plaintiffs' counsel has reviewed detailed financial records of both QLN and its individual owners, and has verified QLN's claim that it lacks the resources to pay a settlement larger than $400,000 at this time or any time in the near-term. Schwartz Decl. ¶7. In fact, based on those documents, Plaintiffs recognize that the only way for them to recover within the one-year timeframe provided in the Settlement will be through the assets of QLN's individual owners. *Id.* However, as discussed below, absent an agreement with QLN, Plaintiffs would have to prove that the individual owners of QLN (not even named in the current complaint) qualify as joint employers under federal and California law, or are alter egos, to recover from their individual assets. *See infra*, Part IV.B, for discussion of this issue. In contrast, this Settlement guarantees payment within that timeframe because QLN's individual owners have granted Plaintiffs, class members, and class counsel a lien on their home, upon which Plaintiffs may foreclose if QLN or its individual owners fail to pay within one year to the day from the date of preliminary approval. *Exh. 1* at 12.

Threat of bankruptcy is a legitimate reason to settle. A court may examine a defendant's potential for insolvency in determining the fairness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (evaluating class action settlement adequacy, finding, "Here one factor predominates to make clear that the district court acted within its discretion. That factor is [the defendant's] financial condition."); *see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (rejecting objector's challenge to class action settlement where the lower court "meaningfully accounted for potential value of members' claims . . . and noted risks of

bringing such claims to trial, and evidence indicated that one of defendants that could be subject to liability under [a particular theory] was on verge of bankruptcy."). This is because the "prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures." *In re Warner Comm'cns Sec. Litig.*, 618 F.Supp. 735, 746 (S.D.N.Y. 1985).

The threat of bankruptcy may be the primary factor considered in the approval of a settlement for less than the expected judgment award. In *Torrisi*, the Ninth Circuit held that the district court did not abuse its discretion in considering relevant factors, including bankruptcy, in approving a settlement plan, and that the company's financial condition was the chief factor justifying the settlement. 8 F.3d at 1376. When the parties arrived at a settlement, the defendant was in negotiations with creditors and threatened with an involuntary bankruptcy petition. *Id.* Such a failure "could have led to a bankruptcy reorganization which would have left little if anything for class members." *Id.*; *see Lane*, 696 F.3d at 823 (settlement supported by evidence a defendant "was on the verge of bankruptcy, likely making any substantial damages against it annihilative."). The Court should undergo a similar analysis here. *See also In Sandoval v. AB Landscaping, Inc.*, 2012 WL 4466585, at *6-7 (N.D. Cal. 2012) (Lloyd, J.) (considering defendant's solvency in evaluating class action settlement); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *4 (S.D. Cal. 2009) (plaintiffs' concern, as well as the real risk that defendants would declare bankruptcy if plaintiffs recovered the full judgment, supported final approval of class settlement); *Velez v. Majik Cleaning Serv.*, Inc., 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (finding that defendant's assertion that it was a "very small company" lacking "capital assets," and that judgment in excess of the settlement amount would likely destroy the corporate entity, militated in favor of approving the proposed settlement).

Structuring a class settlement which could provide class members with meaningful compensation and institutional reform while allowing QLN to continue operating SuperCamp programs was the central focus of Mediator Rottman during the Parties' negotiations. Schwartz Decl. ¶5. After retaining and consulting with bankruptcy counsel, Plaintiffs' counsel determined that, if QLN files for bankruptcy, the class's chances of recovering more than $400,000 appear to be very small, and that recovery would be significantly delayed beyond the one-year provided by

the Settlement. *Id.* ¶7. Moreover, the continued litigation of this case will increase the attorneys' fees and costs for both sides, cutting into the limited assets with which QLN and its individual owners could compensate class members. Accordingly, the Settlement is the best result for the class under the circumstances, in the opinion of Plaintiffs and their counsel. *Id.* ¶¶10-11.

**B.    Joint Employer Issue**

Whether Plaintiffs would be able to obtain and enforce judgment against QLN's owners in their individual capacities as Plaintiffs' joint employers (along with QLN), or be able to pursue a judgment against the owner's other LLC (the holding company for their commercial property) is an open question. While corporate officers can be held accountable for FLSA violations under some circumstances (*see Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) (CEO and COO of defendant corporation's corporate parent were "employers" who could be held liable under FLSA), California law on this issue is unsettled. Under *Martinez v. Combs,* 49 Cal.4th 35, 64, 69 (2010), a corporate agent merely acting within the scope of his agency may not be liable for overtime and meal/rest period violations. *See id.*, 49 Cal.4th at 66. Courts have split as to whether the individual owner of a closely held corporation exercising control over the wages, hours, and working conditions of workers, and suffering and permitting them to work, can be held liable for Labor Code violations. *Compare Garcia v. Bana*, 2013 WL 621793, at *8-9 (N.D. Cal. Feb. 19, 2013) (Beeler, M.J.) (owner can be joint employer under California wage laws) *with Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 396 (N.D. Cal. 2012) (Koh, J.) (opposite). The possibility of having no recourse to QLN's individual owners renders QLN's inability to pay an even greater risk for Plaintiffs. The Settlement eliminates this risk by allowing Plaintiffs to obtain compensation from QLN's individual owners within one year, along with a security interest in their residence to guarantee payment.

**C.    Arbitration Agreements**

Plaintiffs and class members were required to sign arbitration agreements as a condition of employment with QLN, and prior to the Parties' agreement to settle, QLN moved to compel arbitration. (Dkt. #30.) Although Plaintiffs contend that the arbitration clauses, which are silent as to class claims, do not preclude class arbitration, QLN asserts that Plaintiffs have waived their class and collective claims because QLN did not explicitly consent to the arbitration of class

claims. (Dkt. #30-2 at 16-18.) There exists substantial uncertainty surrounding the interpretation of arbitration agreements which are ambiguous as to class claims, and judicial review in this context is quite limited. *Compare Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2009) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") *with Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2070 (2013) (arbitration agreement silent on class claims but comprehensive in scope could be read by arbitrator to include class claims).

Moreover, the interpretation of an arbitration agreement is a question for the arbitrator. *See Laughlin v. VMware, Inc.*, 2012 WL 298230, at *8 (N.D. Cal. Feb. 1, 2012) ("[D]ecisions regarding the scope of arbitration, including whether class arbitration may proceed, are left to the arbitrator"); *see also Oxford Health*, 133 S.Ct. at 2071 ("The arbitrator's construction holds, however good, bad, or ugly."). Were an an arbitrator to find that the agreement bars class claims, the absent class members would likely recover nothing. By entering into the Settlement, Plaintiffs can eliminate that risk. Moreover, class-arbitration would be very costly for QLN, and it would not resolve the PAGA claims, which cannot be compelled into arbitration, *see Sakkab v. Luxottica Retail N.A., Inc.,* 803 F.3d. 425, 431 (9th Cir. 2015). This Settlement directs QLN's limited resources to class members rather than an arbitrator.

### D. "Organized Camp" Exemptions

Plaintiffs assert that the "organized camp" exemptions under the FLSA and the California Labor Code do not apply to QLN's SuperCamp employees. *See* 29 U.S.C. § 213(a)(3); Cal. Lab. Code § 1182.4. Judge Edward M. Chen of this Court previously ruled that the FLSA's organized camp exemption requires "a distinct physical place of business . . . that 'is' an organized camp." *Wright v. Adventures Rolling Cross Country, Inc.*, 2013 WL 1758815, *5 (N.D. Cal. Apr. 24, 2013). It also ruled that the California organized camp exemption requires "a site with program and facilities established for the primary purposes of providing an outdoor group living experience." *Id.* at *7. QLN's SuperCamps, which are held on college campuses and teach academic skills, cannot satisfy these requirements.

However, in *Wright,* the Court stated: "the Court's discussion above as to the applicability of the recreational establishment/organized camp exemption demonstrates that the issue is a close

one in which reasonable minds can differ." *Id.* at *9. This Settlement removes the risk to Plaintiffs of a different interpretation of either organized camp exemption on the instant facts, involving an academic summer program, and, further, ensures that QLN will not rely on any such exemptions in the future. *See Exh. 1* at 22 ("Defendants represent that, as to all SuperCamp employees, they will comply with state and federal wage-and-hour laws without asserting any exemption under the organized camp exemption.").

### E. Willfulness

Plaintiffs have not yet established that QLN's alleged violations of the labor laws were "willful" under the FLSA. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (standard for willfulness). QLN can also be expected to assert a "good faith" defense to Plaintiffs' claims under §§ 203 and 226 of the California Labor Code, in light of the lack of authority directly on point. If Plaintiffs were unable to establish willfulness, the statute of limitations under the FLSA would be reduced to two years. *See* 29 U.S.C. § 255(a). In addition, if QLN were successful in a good faith defense, such would bar Plaintiffs' claims under Labor Code §§ 203 and 226.

### F. Interest and Penalties

The Parties agree that two-thirds of the settlement payment is related to interest and penalties (*Exh. 1* at 12). This estimate is reasonable, because PAGA claims and other penalty claims asserted are a significant proportion of the estimated damages exposure, and because interest rates can be as high as 10 percent, and would have begun to accrue as early as October 2011. *See Bell v. Farmers Ins. Exch.*, 135 Cal.App.4th 1138, 1150 (2006) (affirming 10 percent prejudgment interest rate on unpaid wages); *Criswell v. W. Airlines, Inc.*, 709 F.2d 544, 556-57 (9th Cir. 1983) (awarding California's statutory rate of 7 percent). However, absent the Settlement, Plaintiffs would be at risk of failing to recover interest and penalties, in full or in part.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The Settlement is fair, adequate and reasonable, justifying this Court's preliminary approval of it. Because the eventual fairness hearing will provide the Court with another opportunity to review the Settlement, and with the benefit of class member input, if the proposed settlement is "within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to give the Class notice of the proposed Settlement. *Harris v. Vector*

*Marketing Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) (Chen, J.) (citing cases); *see also Manual for Complex Litig., 4th* § 21.632 (2007). Further, settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel, after thorough investigation, are entitled to a presumption of fairness. *See Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

Plaintiffs' counsel recommends approval of the settlement. *See* Schwartz Decl. ¶2. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). *See also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" to counsel's recommedations).

As detailed in the Settlement Agreement and the Declaration of counsel, the Settlement is the result of good-faith negotiations between Plaintiffs and QLN through their respective attorneys, aided by mediator Steve Rottman, Esq., during a day-long session on March 24, 2016 and in months of negotiations thereafter. *See* Schwartz Decl. ¶5.

Plaintiffs support the Settlement because their prospects of collecting more than the settlement amount if they proceed to trial are highly uncertain, for at least the following reasons. *First*, QLN is at risk of being rendered insolvent if required to pay a settlement or judgment greater than $400,000. *Second*, Plaintiffs' best avenue of recovery is through the assets of QLN's individual owners, which would require proof of joint employer status. *Third*, the existence of arbitration agreements which could be interpreted to bar class claims creates risk that the class will recover nothing. *Fourth*, Plaintiffs risk an unfavorable interpretation of the "organized camp" exemption. *Fifth*, Plaintiffs must establish QLN's willfulness and the absence of good faith to extend the FLSA's statute of limitations and obtain certain penalties under the Labor Code.

For the foregoing reasons, among others, the Parties conclude that the Settlement —which will allow QLN to avoid further protracted, costly litigation, which will provide certain and significant compensation to the class members, and which will reform QLN's compensation practices—is the best outcome for the Parties under the circumstances. Given the risks, the exceptional settlement provides significant compensation, especially given that class members are temporary, seasonal employees; Defendants have agreed to bear the employer's share of payroll

13

taxes; and there is *no reversion* to Defendants.[1] QLN's reclassification going forward should be weighted heavily. As such, the agreement meets the Ninth Circuit's standards for approval, articulated in *Officers for Justice v. Civil Service Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable" and providing list of relevant factors).

### A. Class Action Settlements Are Encouraged

In general, federal law strongly favors and encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (citing the "overriding public interest in settling and quieting litigation" which is "particularly true in class action suits"). The Parties' best interests are served by settling, rather than proceeding to trial.

### B. Plaintiffs Contend that the Settlement Satisfies the Requirements of FRCP 23 and the FLSA for Purposes of Settlement.

Plaintiffs contend that preliminary approval of the proposed settlement is justified because, for settlement purposes, the settlement meets the requirements of a class action pursuant to Federal Rule of Civil Procedure 23 and Ninth Circuit jurisprudence. Specifically, the class members are numerous, Plaintiffs are typical of the class members, Plaintiffs are adequate representatives of the class, there are common questions of law and fact that predominate, and a class action is the superior means of resolution of the claims here. Moreover, the class members are "similarly situated" under the more lenient standard of 29 U.S.C. § 216(b).

#### 1. The Class Is Sufficiently Numerous

Plaintiffs satisfy the numerosity requirement of Rule 23(a)(1) if "the class is so large that joinder of all members is impracticable." *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (Chen, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Here, there are approximately 410 class members. *Exh. 1* at 2. Joinder of four hundred individuals nationwide would be impracticable, and Plaintiffs thus easily meet the numerosity requirement. *See Ellis*, 285 F.R.D. at 506 (purported class of forty members was sufficient to satisfy numerosity, and 100 or more plaintiffs leads to a presumption of numerosity).

---

[1] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (explaining that reversionary settlements signal to the district court that class counsel has not put the interests of the class before their own).

### 2. There Are Questions of Law or Fact Common to the Class

Plaintiffs satisfy the commonality requirement of Rule 23(a)(2) if "either 'shared legal issues with divergent factual predicates' or 'a common core of salient facts coupled with disparate legal remedies within the class' are present." *Ellis*, 285 F.R.D. at 506 (citing *Hanlon*, 150 F.3d at 1019-20). "'Even a single common question' will suffice to satisfy Rule 23(a)." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)) (internal brackets omitted).

Here, there exist at least two common questions of law, turning on a single question of fact, apply to all class members: 1) whether QLN's decision to treat them as exempt can be justified by the "organized camp" exemptions of 29 U.S.C. § 213(a)(3) or 2) justified under California Labor Code § 1182.4, given that QLN does not operate a "site" or "establishment" that is an organized camp. Any differences among the class members are immaterial to these common questions of law, which are based on common questions of fact (*i.e.*, SuperCamp's lack of a site or facility as defined under the exemptions, and lack of a focus on outdoor activities).

### 3. The Plaintiffs' Claims Are Typical of Class Members' Claims

Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) if the "claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. Rule Civ. P. 23(a)(3). "Courts assess typicality by determining 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *See Ellis*, 285 F.R.D. at 533 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 508 (9th Cir. 1992).

Here, as noted above, all class members suffered the same injury as each other and as the Plaintiffs in that they were not paid minimum wages or overtime, and were not provided with meal or rest breaks. The action is not, in any way, based on conduct unique to the Plaintiffs and no atypical defenses exist with respect to the representative Plaintiffs related to the exemptions.

### 4. Plaintiffs Are Adequate Representatives of the Class

Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4) if they do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel. *Ellis*, 285 F.R.D. at 535. Neither representative plaintiff has any conflict of interest with the proposed class. *See* Schwartz Decl. ¶8. Plaintiffs are represented by qualified and competent counsel with a

successful track record in class action litigation. *See* Schwartz Decl. ¶12. Accordingly, the Court should appoint Plaintiffs and their counsel to represent the Class.

### 5. Common Questions of Law and Fact Predominate and Class Resolution Is Superior

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"In evaluating whether common issues predominate, the operative question is whether a putative class is 'sufficiently cohesive' to merit representative adjudication." *Ellis*, 285 F.R.D. at 537 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common issues need not be dispositive of the litigation, but merely "must 'present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication' so as to justify 'handling the dispute on a representative rather than individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). Here, the central question of the case is whether QLN misclassified class members as exempt from minimum wage, overtime, and break requirements based upon the organized camp exemptions, as in *Wright,* where the plaintiffs (represented by the undersigned) won summary judgment on behalf of the class. This question is a "significant aspect of the case [that] can be resolved for all members of the class in a single adjudication." *See id.* The class is cohesive in that all Trip Leaders were subject to the same application of the organized camp exemptions.

Moreover, resolution of the issues in this case on a class-wide basis is superior to other methods of adjudication. The alternative to a single class action—numerous individual actions—would be inefficient and unfair because many class members would not recover and the transactions costs would potentially eclipse the value of the recovery. *See, e.g., Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").

### 6. FLSA Class Members Are "Similarly Situated."

Pursuant to 29 U.S.C. § 216(b), Plaintiffs respectfully request that the Court certify the

FLSA Class for settlement purposes only. Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) (Wilken, J.).

Here, FLSA class members are similarly situated because they were uniformly classified as exempt based on the FLSA's organized camp exemption. Courts routinely grant conditional certification and order notification of the class in cases alleging misclassification, such as this one, when the plaintiffs challenge a uniform, class-wide policy. *See Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *3 (N.D. Cal. Jul. 18, 2012) (Armstrong, J.); *Hill*, 690 F. Supp. 2d at 1010. Therefore, the Court should certify the FLSA class for settlement purposes only and authorize the dissemination of Plaintiffs' proposed Notice to the class.

## C.     The Settlement Is Fair, Adequate and Reasonable.

"At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris*, 2011 WL 1627973, at *7. Courts act within their discretion in approving settlements that are fair, are not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). Here, the pertinent factors support granting preliminary approval and authorizing distribution of the Class Notice.

### 1.   The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations.

The proposed Settlement was the product of arm's-length, non-collusive negotiations, including a day-long mediation with a highly experienced class-action mediator, and months of additional negotiations. Schwartz Decl. ¶¶3, 5; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) (Illston, J.) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Although the Parties were able to reach an agreement relatively early in the litigation, Plaintiffs were well-informed about the strengths and weaknesses of their case after a 30(b)(6) deposition, reviewing the

relevant corporate policies, conducting a damages analysis, and assessing Defendant's financial status, with the assistance of retained bankruptcy counsel. Schwartz Decl. ¶¶5-7.

Plaintiffs and the putative class members are and have been represented by experienced counsel, who fought for terms most advantageous to the entire class throughout the course of the litigation. Schwartz Decl. ¶¶3, 5, 12. Among other advantageous terms, counsel insisted that the settlement payment be non-reversionary (*i.e.*, maximizing the payments to all class members filing claims) and that Defendants pay the employer's share of payroll taxes. Most importantly, counsel advocated strongly that no settlement would be possible unless QLN agreed to reform their compensation practices and agree to no longer rely on any organized camp exemptions under federal or California law. Schwartz Decl. ¶5; *see also Exh. 1* at 22. Plaintiffs' counsel insisted on a security interest against real property to guarantee payment to the class, in light of Defendant's insistence on delayed payment. Schwartz Decl. ¶5; *Exh. 1* at 12-13.

## 2. No Deficiencies in Settlement Agreement

The Settlement will provide class members with average payments slightly larger than what most class members were paid per SuperCamp program—an impressive recovery given that the class members were temporary, seasonal employees. The payments are reasonably and simply based on the number of SuperCamp programs each class member worked, the job title held, and whether the class member worked in California or outside of California.

Other than the named Plaintiffs, who are receiving additional compensation, the class members are waiving only their wage-and-hour claims. *See Exh. 1* at 29-30. In addition, class members do not waive their FLSA claims until they cash their settlement checks. *Id.* at 20.

The Settlement also includes a valuable injunctive relief component, as QLN has agreed that it wil reclassify Team Leaders, Senior Team Leaders, Logistics Coordinators, Office Coordinators, and Wellness Persons as non-exempt, hourly paid employees and will reclassify domestic Facilitators, Lead Facilitators, Site Administrators, and Site Counselors as exempt employees paid on a salary basis. *See Exh. 1* at 21-22 ("Defendants represent that, as to all SuperCamp employees, they will comply with state and federal wage-and-hour laws without asserting any exemption under the organized camp exemption."). The Settlement is also the best result for the Class in light of the threat of QLN's insolvency.

### 3. No Preferential Treatment; Class Representatives' Modest, Justified Enhancements

The Settlement will treat all class members equally, according to the same formula described above (with the exception of the two Class Representatives and one FLSA opt-in plaintiff), which emphasizes the number of programs worked by each class member. Moreover, the distinctions made between class members according to their job titles and whether the additional protections of California law apply appropriately reflect the strength of each class member's claim. *See, e.g.*, *Hanlon*, 150 F.3d at 1020-21 (noting that differential treatment of class members based on factors such as variations in state law is appropriate).

The Class Representatives' modest enhancement are justified under the case law and the facts of this case. *See, e.g.*, *Staton*, 327 F.3d 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (Williams, J.) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id.* at 299. These factors (with the exception of the duration of the litigation) all support the need for enhancement payments to the Class Representatives here. Moreover, the $5,000 amount for the enhancements (1.25% of the common fund each) is presumptively reasonable. *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (Chen, J.) ("Several courts in this District have indicated that [for] incentive payments . . . $5,000 is a reasonable amount.").

First, Plaintiffs Johnson and Harmon experienced financial and reputational risk and harms as a result of bringing this case, by severing ties with the SuperCamp organization and community, damaging friendships with former co-workers, and losing a source of job references and future employment opportunities. *See* Johnson Decl. ¶¶8-9; Harmon Decl. ¶¶8-10; *see also*

*Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"). These strong disincentives are sufficient to support a small payment of $1,000 to the single FLSA opt-in plaintiff in this case, who assumed similar reputational risks. *See, e.g.*, *In re Bank of Am. Wage & Hour Empl. Litig.*, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) ($300-$1,000 each to class member participants); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $1,000 service payments to non-representative class members who participated in the litigation); *Satchell,* 2007 WL 1114010, at *4 ($5,000 each to 18 class members who participated).

Second, the class representatives experienced "notoriety" within the close-knit community of SuperCamp alumni, resulting in stress and anxiety. *See* Johnson Decl. ¶8-9; Harmon Decl. ¶8-9. The two named Plaintiffs and a single opt-in plaintiff were the only class members to step forward in this case, despite the substantial efforts of the Class Representatives to reach out to other former SuperCamp employees, who frequently cited fear of reputational harm as their only reason not to join the lawsuit. Schwartz Decl. ¶8; Johnson Decl. ¶9; Harmon Decl. ¶8-9.

Third, the Class Representatives estimate that they have each spent over 50 hours of time on this case, including participating in the mediation, reviewing pleadings and agreements, and the time to consult extensively with Plaintiffs' counsel about the case, both before and after the case was filed. Schwartz Decl. ¶8; Johnson Decl. ¶7; Harmon Decl. ¶5. Plaintiffs were the *only* class members actively involved in the suit— meaning that not one SuperCamp employee would have recovered anything if it were not for their efforts. This factor, too, weighs heavily in favor of a the enhancement.

Fourth, the personal benefit that the Class Representatives would receive if they received the same Settlement Payment as the rest of the Class would not come close to compensating them for the foregoing personal costs they have paid in order to benefit the class. In addition, Plaintiffs will not personally benefit from QLN's reclassification of SuperCamp employees, although future SuperCamp employees (and likely other employees in the industry) will enjoy that benefit as a result of the Class Representatives' willingness to step forward and prosecute this case.

Perhaps most importantly, Plaintiffs Johnson and Harmon are executing a much broader waiver of claims than other class members, warranting additional compensation. *Ex1 1* at 29-33; *see Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour plaintiff signed a general release). For the foregoing reasons, undersigned counsel believes that the presumptively-reasonable $5,000 amount is the minimum enhancement in a case of this nature which would viably promote the public policy interest in encouraging those with wage-and-hour claims to assert them despite the fears associated with doing so. Schwartz Decl. ¶8; *see also Gentry v. Superior Court*, 42 Cal.4th 443, 459-61 (2007).

### 4. The Settlement Falls Within the Range of Possible Approval

The primary inquiry at this stage is whether Plaintiffs' expected recovery absent settlement balances appropriately against the value of the settlement offer. *See Harris*, 2011 WL 1627973, at *9 (citing *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009). Courts "preview the factors that ultimately inform final approval": (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a government participant (not applicable here); and (8) the reaction of class members. *Id.*

Here, as noted, Plaintiffs' expected recovery upon a victory at trial is severely limited by Defendant QLN's ability to pay, which would only diminish over time as a result of the expense of continued litigation. Counsel for Plaintiffs are confident that if Plaintiffs won at trial—assuming QLN remained solvent long enough to reach trial—the Class would ultimately fare worse than if this Settlement is approved. Schwartz Decl. ¶7. Plaintiffs' counsel has pushed to ensure that the settlement amount is the largest possible amount that QLN can pay without being forced into bankruptcy. *Id*. Thus, even if Plaintiffs prevailed on the central merits question in this case, the Settlement would be the most advantageous course for the Class.

The Settlement Amount is large compared to the amount Plaintiffs were paid by SuperCamp and compares favorably with the estimated full relief for Plaintiffs and the class members' claims. As explained in further detail in Counsel's appended declaration, the estimated

value of the claims, according to a comprehensive analysis, is approximately $1.8 million. *See* Schwartz Decl. ¶11.[2] The $400,000 recovered is thus arguably 22% of the total exposure in the case – a strong result, warranting this Court's approval. Compare this result to *Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014), in which this Court found that a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see also O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal.) (Spero, M.J.) (attached as Ex. 3 to Schwartz Decl.) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief).

With respect to the factors that will apply at the Final Approval stage:

*First*, Plaintiffs' claims on the merits are strong, as noted, but the Class can benefit little from those strengths if QLN files for bankruptcy. For the reasons noted above, Plaintiffs' ability to hold QLN's individual owners personally liable is uncertain. In addition, Plaintiffs face the risk of an unfavorable interpretation of the organized camp exemptions, as well as adverse decisions on questions of willfulness and good faith.

*Second*, the complexity and the expense of a Class trial would simply further reduce the assets that are available to QLN to compensate the Class.

*Third*, the risk of failing to maintain Class status is small, but maintaining Class status will not matter if QLN is unable to pay.

*Fourth*, as discussed, the amount offered in settlement is large relative to the wages that the Class was paid by QLN, and reflects the fact that class members are temporary, seasonal employees. The fact that the Settlement amount is not larger in absolute terms is a function of QLN's inability to pay.

*Fifth*, the Parties have cooperatively engaged in discovery, including all information necessary (including a detailed, anonymized class list including salary and dates of employment) to assess the strengths and value of each class member's claims.

---

[2] This total excludes penalty claims and liquidated damages. *Cf. Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering treble damage penalties).

Sixth, the firm representing Plaintiffs is highly experienced in wage and hour class actions, and it strongly affirms that this Settlement is in the best interests of the Class, and is, realistically, the best possible result the Class could hope to achieve in light of QLN's financial status. *See* Schwartz Decl. ¶12 (detailing counsel's experience).

Seventh, there is no governmental entity involved.

Eighth, with respect to the Class's reaction, only three Plaintiffs have stepped forward in this case, so for most of the Class, the Settlement can be expected to come as a welcome surprise.

### 5. Attorneys' Fees of One Third of the Class Recovery Are Justified

Defendants have agreed not to oppose any requests for attorneys' fees of one third of the total Settlement Amount of $400,000. *Exh. 1* at 9-10. The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert***,** 444 U.S. 472, 478 (1980). *See also Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton*, 327 F.3d at 967 (same). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount, and courts that depart from the benchmark should indicate their reasons for doing so. *Glass,* 2007 WL 221862, at *14.

Here, Plaintiffs' counsel's request for a slight upward departure to 33 percent of the common fund ($133,333.33) is justified for the outstanding result achieved, the non-reversionary nature of the settlement, and the injunctive relief component of the settlement, which is not accounted for in the common fund. *See Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (approving fee larger than settlement itself, noting that when injunctive relief was taken into account, the fees as a percentage of the recovery were reasonable); *Singer v. Am. Airlines Fed. Credit Union*, 2006 WL 3093759, at *4 (N.D. Cal. Oct. 30, 2006) (Spero, M.J.) (injunctive relief obtained for class helps justify fees and plaintiffs' enhancements). Courts consider not only the results achieved and the quality of work – which Plaintiffs submit are high on all counts – but also the risk of litigation, the contingent nature of the fee and the financial burden carried by the Plaintiffs. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *9 (N.D. Cal. 2007) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

"Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in the fee analysis. *Vizcaino*, 290 F.3d at 1049. Compensation merely at the benchmark would undercompensate counsel, in light of the projected monetary value of the reforms not accounted for in the $400,000 common fund. The financial benefits to future SuperCamp employees will accrue continually in the future. Counsel should be compensated beyond the benchmark in a modest way to reflect this result. *See In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Laguna*, 753 F.3d at 922-23.

"[C]lass counsel should [not] necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050 n.5. The Court should readily grant preliminary approval to the settlement with the $133,333.33 fee award, which is roughly equal to counsel's anticipated lodestar (already well over $100,000), factoring in preliminary and final proceedings and communications with class members during the notice and distribution periods. Schwartz Decl. ¶13. With their fee petition, Plaintiffs' Counsel will provide a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check. In light of *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, Plaintiffs will make their fee petition public more than 15 days in advance of the final approval hearing. *See* [Proposed] Order.

**6. The Notice to the Class Is Sufficient.**

The proposed Class Notice and proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem*, 521 U.S. at 618-20. The proposed form of notice will be sent via first-class mail and electronic mail to the last known mailing address and email address of each class member and, prior to mailing the Class Notices, an experienced Claims Administrator will consult the United States Postal Service's National Change of Address Database to review the accuracy of and, if possible, update a class member's mailing address. *Exh. 1* at 22-24. The Class Notice (*Exh. 1* at Ex. A) will provide the details of the case and the proposed settlement and the specific options available to class members, as described above. The Class Notice will provide

class members with information from which they can make an informed decision about whether to opt out, object, or take no further action and receive a payment from the settlement. *Id.* Thus, the proposed Class Notice is adequate.

### 7. The Requested *Cy Pres* Beneficiary Is Appropriate

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the cy pres beneficiaries." *Id.* (internal quotations omitted). Here, there is. This is a workers' rights suit seeking minimum wages in California, among other claims, to benefit the low-wage employees of an academic summer program. The Legal Aid Society – Employment Law Center (www.las-elc.org) is the leading provider of direct legal services in employment law for low-wage workers in California. The Court should thus approve this *cy pres* recipient.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs submit that the proposed settlement is fair, adequate, and reasonable. Plaintiffs and their counsel believe that the proposed settlement is in the best interests of the Plaintiffs and the Class. Under the applicable class and collective action standards, Plaintiffs request that the Court: (a) preliminarily approve the Settlement; (b) certify the proposed classes, for settlement purposes only; (c) name Bryan Schwartz Law as Class Counsel, and Trevor Johnson and Samantha Harmon as Class Representatives; (d) name Rust Consulting as Claims Administrator; (e) approve the Class Notice to be sent to the Settlement Class, and (f) and schedule a final approval hearing date.


Dated: May 23, 2016             /s/ *Bryan J. Schwartz*
                                Bryan J. Schwartz
                                BRYAN SCHWARTZ LAW