# EXHIBIT 1

**PETTIT KOHN INGRASSIA & LUTZ PC**
Thomas S. Ingrassia (SBN 149673)
Jenna H. Leyton-Jones (SBN 254357)
Shannon R. Finley (SBN 294329)
11622 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 755-8500
Facsimile: (858) 755-8504
E-mail: tingrassia@pettitkohn.com
         jleyton@pettitkohn.com
         sfinley@pettitkohn.com

*Attorneys for Defendant Quantum Learning Network, Inc.*
*and Interested Parties Deporter and Chapon*

**BRYAN SCHWARTZ LAW**
Bryan Schwartz (SBN 209903)
Logan Starr (SBN 305598)
1330 Broadway, Suite 1630
Oakland, CA  94612
Telephone: (510) 444-9300
Facsimile:  (510) 444-9301
Email: bryan@bryanschwartzlaw.com
         logan@bryanschwartzlaw.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| TREVOR JOHNSON and SAMANTHA HARMON, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>               Plaintiffs,<br><br>vs.<br><br>QUANTUM LEARNING NETWORK, INC., a corporation, doing business as SuperCamp; and DOES 1-50,<br><br>               Defendants. | CASE NO. 5:15-cv-05013-LHK<br><br>**COLLECTIVE AND CLASS ACTION**<br><br>**SECOND AMENDED STIPULATION AND CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Complaint Filed: October 30, 2015 |

## STIPULATION

This Stipulation and Class Action Settlement Agreement ("Agreement") is entered into between Defendant Quantum Learning Network, Inc. and Interested Parties Roberta DePorter and Joseph Chapon (collectively, "Defendants"), on the one hand, and individual named plaintiffs Trevor Johnson and Samantha Harmon ("Plaintiffs" or "Class Representatives"), each on their own behalf and as Representative Plaintiffs on behalf of the Class Members (as described in Paragraphs 1-3). For purposes of this Agreement, Plaintiffs and Defendants are referred to individually as a "Party" and collectively as the "Parties."

## DEFINITIONS

**A.    Class Definitions**

1.    "Class Members" shall be comprised of the membership of two subclasses, (1) the "California Class," and (2) the "FLSA Class." "Class Member" means any person who is a member of the California Class and/or FLSA Class. The Parties understand that there are approximately 410 Class Members. "Settlement Class Members" means all members of the Class who do not timely opt out of the California Class and who sign and return to the Claims Administrator a consent-to-join form or who otherwise file their consent-to-join with the Court, thereby opting into the FLSA collective action. An individual can be a member of both the California Class and the FLSA Class.

2.    The "California Class" shall be: All SuperCamp employees who worked in California during the Class Period and were paid on a per-camp basis, beginning four years before the date of the filing of the complaint in this matter, October 30, 2011. The "California Settlement Class" shall be all

members of the California Class who do not timely submit a request to opt out of this settlement.

3.     The "FLSA Class" shall be: All SuperCamp employees who worked in the United States during the Class Period, beginning October 30, 2012, and who were paid on a per-camp basis. The "FLSA Settlement Class" shall be all members of the FLSA Class who sign and return to the Claims Administrator a consent-to-join form or who otherwise file their consent-to-join with the Court, and who are thereby deemed under this Agreement to have "Opted-In" to this action pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

4.     "Class Period" means from October 30, 2011, through August 20, 2016, for the California Class, and October 30, 2012 through August 20, 2016, for the FLSA Class.

**B.    Additional Definitions**

When used in this Agreement, along with the defined terms set forth above and elsewhere in this Agreement, the following terms have the meanings specified below:

5.     "Agreement" means this Joint Stipulation for Settlement and Release and the terms and conditions assented to by the Parties in this document.

6.     "Claims Administrator" means Rust Consulting, subject to the Court's approval, to disseminate notices, prepare settlement distribution calculations, distribute checks, issue tax reporting documents, and conduct any necessary reporting to the Parties and/or the Court, as set forth in this Agreement. The fees and costs of the Claims Administrator are capped at

$20,000, per an agreement with Class Counsel, and shall be referred to as the "Claims Administration Charges."

7.      "Class Counsel" means Bryan Schwartz Law and all attorneys employed by that firm.

8.      "Class Counsel Attorneys' Fees and Costs" means the attorneys' fees and costs awarded by the Court to Class Counsel.

9.      "Class Representatives" means Plaintiffs Trevor Johnson and Samantha Harmon.

10.     "Class Representative Enhancements" means the payments, as determined and approved by the Court, to the Class Representatives from the Gross Settlement Amount that are in addition to their Net Pro Rata Distributions.

11.     "Class Member Enhancements" means the payments, as determined and approved by the Court, to any Class Member who filed an affirmative opt-in, pre-settlement, from the Gross Settlement Amount that are in addition to their Net Pro Rata Distributions.

12.     "Court" means the United States District Court for the Northern District of California, the Honorable Lucy H. Koh, presiding.

13.     "Date of Preliminary Approval" means the date when the Court issues an order granting preliminary approval of the settlement reflected in this Agreement.

14.     "Effective Date" means the date when the Court issues an order granting final approval of this Agreement.

15.     "Final Fairness Hearing" means the hearing at which the Court determines whether this Settlement is fair, reasonable and adequate, anticipated by the Parties to occur not later than February 28, 2017.

16.    "Gross Settlement Amount" means Four Hundred Thousand Dollars ($400,000), the total sum that Defendants will be paying for the settlement of this Lawsuit and of the Released Claims in accordance with the terms of this Agreement, except that Defendants will separately pay the amount of the employer's share of any payroll taxes that arise from any payments to Settlement Class Members pursuant to this Agreement.

17.    "Lawsuit" means this action, styled as *Trevor Johnson, et al. v. Quantum Learning Network, Inc. et al.*, initially filed on October 30, 2015, in the United States District Court, Northern District of California, Case No. 5:15-cv-05013-LHK, as subsequently amended by Plaintiffs.

18.    "LWDA" means the California Labor & Workforce Development Agency.

19.    "LWDA Distribution" means the $2,250.00 to be distributed to the LWDA from the Gross Settlement Amount (75% of the $3,000.00 allocated to civil penalties pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA")).

20.    "Net Settlement Fund" means the amount remaining after deducting each of the following from the Gross Settlement Amount: the LWDA Distribution, the Class Representative Enhancements, the Class Member Enhancements, the Claims Administration Charges, and the Class Counsel Attorneys' Fees and Costs.

21.    "Preliminary Approval Hearing" means the hearing at which the Court will be requested prelimarily to make the determinations set forth in Paragraph 35, below. The date for this hearing will be set forth in Plaintiffs' motion for preliminary approval, or such other date as the Court may designate.

22. "Released Claims" means all claims and causes of action that were asserted in the original Complaint, the First Amended Complaint and/or the Second Amended Complaint (collectively, the "Complaints") in the Lawsuit, and any additional wage-and-hour claims that could have been brought based on the facts alleged in the Complaints on behalf of Class Members, through the date of final approval. In addition, with respect to the Class Representatives, "Released Claims" includes a general release of any and all claims arising out of or related to their employment with Defendants, seeking any such employment, or the termination thereof, including without limitation any claim for wrongful termination in violation of public policy, employment discrimination, violation of the California Fair Employment and Housing Act, or violation of the Americans with Disabilities Act. Said general release shall encompass a waiver of the protections provided for in California Civil Code § 1542.

23. "Released Parties" means Defendants and their past, present or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, executors, administrators, representatives, trustees, accountants, auditors, consultants, insurers and reinsurers of such identified Released Parties and their respective successors and predecessors in interest, parents, subsidiaries, divisions affiliates, and attorneys, both individually and collectively.

## BACKGROUND AND FACTUAL RECITALS

24. On October 30, 2015, Plaintiffs filed a putative class and collective action complaint in the United States District Court, Northern District of California, Case No. 5:15-cv-05013-LHK, entitled *Trevor Johnson, et al. v. Quantum Learning Network, Inc., et al.* Plaintiffs

subsequently filed two amended complaints, most recently the operative Second Amended Complaint ("SAC") on January 27, 2016. The SAC asserted causes of action for (1) minimum wage violations under the FLSA, 29 U.S.C. § 206; (2) overtime wage violations under the FLSA, 29 U.S.C. § 207; (3) minimum wage violations under California Labor Code §§ 1194 and 1197, and IWC Wage Order(s); (4) overtime wage violations under California Labor Code §§ 510, 1194, and 1198, and IWC Wage Order(s); (5) failure to provide itemized wage statements (Cal. Lab. Code § 226); (6) failure to provide and/or authorize meal and rest periods (Cal. Lab. Code §§ 512 and 226.7, and IWC Wage Order(s)); (7) failure to compensate for all hours worked (Cal. Lab. Code §§ 221 and 223); (8) waiting time penalties (Cal. Lab. Code §§ 201-203); (9) violations of California Business & Professions Code §§ 17200, *et seq.*; and (10) civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* ("PAGA").

25.    On February 17, 2016, Defendant QLN moved to compel arbitration of the Class Representatives' individual claims, dismiss the class and collective claims, and stay the PAGA claims pending the completion of arbitration.

26.    On March 24, 2016, the Parties conducted an arms' length, private mediation of the Lawsuit with mediator Steve Rottman, Esq, in Los Angeles, during which the Parties reached an agreement in principle to resolve the Lawsuit. As a result of this agreement agreement in principle, Defendants agreed to withdraw their motion to compel arbitration, on March 29, 2016.

27.   After additional negotiation, on April 14, 2016, the Parties executed a memorandum of understanding and, on April 18, 2016, filed a notice of settlement with the Court.

28.   It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims against the Released Parties arising from or related to the claims, and that this Agreement shall constitute a full and complete settlement and release of all the Released Parties from all of the Claims averred in the Lawsuit.

29.   Defendants have concluded that further litigation of the Released Claims encompassed by this Agreement would be protracted and expensive, and would also divert management and employee time.  Defendants have taken into account the uncertainty and risks inherent in litigation and have, therefore, concluded that it is desirable that the claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.

30.   Plaintiffs and Class Counsel believe that the claims asserted in this Lawsuit have merit.  Plaintiffs and Class Counsel, however, recognize and acknowledge the significant expense and length of continued proceedings necessary to prosecute the litigation of the Released Claims against Defendants through trials and through appeals.  Plaintiffs and Class Counsel are also mindful of the possible defenses to the Released Claims, including the existence of mandatory arbitration agreements signed by Class Members.  After careful consideration and mediation, Plaintiffs and Class Counsel have concluded that it is desirable that the claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.  Both Plaintiffs and Class Counsel believe that the settlement set forth in this

Agreement is fair, reasonable and adequate, and confers substantial benefits upon the Class Members.

31.     The Parties recognize the inherent risk in proceeding with wage-and-hour class action litigation based on the current uncertainty of California and federal jurisprudence in wage-and-hour law. The Parties agree that the settlement set forth herein adequately balances the risk of proceeding with the claims against any potential recovery for the Class Members and, therefore, the Agreement represents a fair and just compromise of the Released Claims.

32.     The Parties and their respective counsel of record deem the Agreement to be fair and reasonable and have arrived at the Agreement in arms-length negotiations, with the assistance of a well-known, Los Angeles-based neutral mediator, Steve Rottman, taking into account all relevant factors, present or potential.

33.     The Parties enter into this Agreement on a conditional basis. This Agreement will become final and effective only upon the occurrence of all of the following events: (i) the Court enters an order granting preliminary approval of the settlement reflected in the Agreement; (ii) the Court enters an order granting final approval of the settlement reflected in the Agreement; and (iii) the Effective Date occurs. Unless the Court orders otherwise, this Stipulation shall be deemed null and void *ab initio* upon the failure of any of these three conditions to occur.

## SETTLEMENT APPROVAL PROCEDURE

34.     The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Agreement and shall otherwise use their respective best efforts to obtain

Court approval and implement this Agreement. The procedure for obtaining Court approval of and implementing this Agreement shall be as set forth below.

35.    Within fourteen (14) days after this Agreement has been signed by all parties and their counsel, Plaintiffs shall move the Court for preliminary approval of this settlement, and request an order that accomplishes the following:

(a)    Preliminarily approving this settlement as fair, reasonable, and adequate;

(b)    Preliminarily appointing and approving the Class Counsel;

(c)    Approving the procedure for sending notice to the Class Members as set forth in this Agreement;

(d)    Approving the notices to be sent to the class members in substantially the same form as **Exhibit A** to this Agreement, or as modified by the Court (the "Notice of Settlement"); and

(e)    Approving and authorizing the Claims Administrator to mail the approved Notice of Settlement to the Class Members at their last known or provided address by posting the notice through U.S. mail.

36.    Defendants shall not oppose Plaintiffs' motion for preliminary or final approval of the settlement so long as the motions and supporting papers are consistent with the terms of this Agreement and facts of this case. Class Counsel shall provide Defendants' counsel with a reasonable opportunity to review, provide comments to, and otherwise approve the motions for

preliminary and final approval of the settlement before the motions and supporting papers are filed with the Court.

37.     This Agreement will not become effective, and Defendants shall have no obligation to make any payments contemplated by this Agreement, unless the Court conducts a Final Fairness Hearing, enters an Order, as described below in Paragraph 38(c), approving without material modification all of the terms of this Agreement, and the Effective Date occurs.

38.     Class Counsel shall be responsible for ensuring that at least the following documents are filed with the Court in advance of the Final Fairness Hearing so that the Court will have a sufficient basis upon which to evaluate and approve the settlement:

(a)     A final report by the Claims Administrator providing details regarding the execution of the approved notice process, the rate (if any) of opt-outs, and other information vital to the Court's assessment of the fairness of the Agreement at the Final Fairness Hearing;

(b)     A duly noticed motion, accompanying memorandum of points and authorities prepared by Class Counsel, and such other pleadings, evidence or other documents as may be necessary for the Court to determine that the settlement documented by this Agreement is fair, adequate and reasonable;

(c)     A proposed Order for the Court's signature (i) approving the settlement documented by this Agreement as being fair, adequate and reasonable; and (ii) ordering dismissal of the Lawsuit with prejudice be entered consistent with this Agreement.

39.    Defendants shall not oppose Plaintiffs' motion for final approval of the settlement so long as the motions and supporting papers are consistent with the terms of this Agreement and facts of this case. Class Counsel shall provide Defendants' counsel with a reasonable opportunity to review and provide comments to the motion for final approval of the settlement and proposed order thereon before the motions and supporting papers are filed with the Court.

**EXECUTION OF LIEN AND PAYMENT OF SETTLEMENT**

40.    Contemporaneously with the signing of this Agreement, Interested Parties DePorter and Chapon will execute such documents as are customary and necessary to create a lien secured by a deed of trust (the "Lien"), to be recorded in San Diego County, California, creating a security interest in favor of Plaintiffs, the Class Members, and Class Counsel in the residence owned by Interested Parties DePorter and Chapon and which has been represented to Plaintiffs, the Class Members, and Class Counsel as being located at 2242 Oceanview Road, Oceanside, California 92056 (the "Residence"). The Lien shall be voided only if (1) the Court denies final approval of this settlement; (2) one of the conditions in Paragraphs 87 or 88, occurs (in which case the matter shall proceed as indicated); or (3) at such time as Defendants place into a qualified settlement fund, which shall be established and administered by the Claims Administrator (the "Qualified Settlement Fund"), an amount equal to $400,000 (Four Hundred Thousand Dollars) (the Gross Settlement Amount), plus the full amount necessary to pay the employer's share of payroll taxes on settlement payments, as estimated by the Claims Administrator. In the event of a default under this Agreement, the Lien shall be enforceable by Plaintiffs on behalf of the Class

Members through Class Counsel or other authorized representative. The Court shall retain jurisdiction with respect to all enforcement actions instituted against Defendants in the event of a default.

41.     Defendants hereby represent and warrant that no liens do or shall encumber the Residence senior in priority to the Lien from the time the Lien is recorded until such time as the Gross Settlement Amount is satisfied in full. The Parties agree to obtain title insurance on the Residence, the cost of which will be paid from the Qualified Settlement Fund as a litigation cost.

42.     The Parties agree that Defendants shall place the Gross Settlement Amount ($400,000) and the employer's share of payroll taxes into the Qualified Settlement Fund as soon as practicable, but not later than one (1) year to the day after the Date of Preliminary Approval as defined in Paragraph 13.

43.     The Parties further agree that should Defendants default on this Agreement, including by failing to place into the Qualified Settlement Fund within the timeframe described in Pargraph 42 the Gross Settlement Amount, plus the full amount necessary to pay the employer's share of payroll taxes on settlement payments, such default is a basis for foreclosing on the home that is the subject of the Lien, located at 2242 Oceanview Road, Oceanside, California 92056.

## SETTLEMENT CALCULATIONS AND PAYMENT

44.     All amounts paid as part of this settlement shall be paid out of the Qualified Settlement Fund. These amounts shall include (1) all payments to Class Members under this Agreement, including all amounts required to be paid as federal, state and local payroll taxes by the employer; (2) the LWDA Distribution, (3) the Class Representative Enhancements; (4) the Class

Member Enhancements; (5) the Claims Administration Charges, (6) the Class Counsel Attorneys' Fees and Costs, and (7) any other amounts required to be paid under this Agreement. Under no circumstances, except for the voiding of this Agreement in its entirety as discussed in Paragraphs 87 and 88, below, shall any portion of the Gross Settlement Amount revert to Defendants.

45.    All amounts to be paid by Defendants under this Agreement shall be paid from the Qualified Settlement Fund, and Defendants shall have no obligation under this Agreement or otherwise to make any payment whatsoever beyond their obligation to make payments to the Qualified Settlement Fund in an amount equal to the designated Gross Settlement Amount, except for the employer's share of any payroll taxes that are due by virtue of any payments made to Class Members under the terms of this Agreement.

46.    <u>Claims Administration Charges</u>.  The Claims Administration Charges for administration of the settlement include, but are not limited to, printing and mailing of the Notice of Settlement, processing disputes, and requests for exclusion, in accordance with this Agreement, calculating preliminary and final payment amounts and tax withholdings for Class Members, responding to inquiries from Class Members, issuing and mailing settlement payments and checks, reasonable efforts to locate Class Members, and preparing any required tax returns and tax reports. All Claims Administrator Charges, whether foreseen or unforeseen, will be paid from the Gross Settlement Amount. All Claims Administration Charges shall also be paid from the Settlement Sum. The Claims Administrator shall submit monthly invoices to Class Counsel and Defendants' Counsel and, if approved, such invoices shall be paid out of the Qualified Settlement Fund. The Claims Administrator's fees for these services will be capped at $20,000.

47.   <u>Class Counsel Attorneys' Fees and Costs</u>.  Defendants will not oppose an application by Class Counsel for an award of attorneys' fees up to one-third (33 1/3%) of the Gross Settlement Amount, nor oppose an application by Class Counsel for an award of actual litigation costs incurred by Class Counsel, including but not limited to the cost of obtaining title insurance on the Residence as described in Paragraph 41, all of which will be paid out of the Gross Settlement Amount. The Parties expressly agree that the Court's approval or denial of any request for attorneys' fees and costs are not material conditions to the Agreement, and are to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement. Any order or proceeding relating to the application by Class Counsel for an award for attorneys' fees and costs shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of attorneys' fees and costs requested by Class Counsel, the remaining amount will be redistributed to the Settlement Class Members on a pro rata basis.

48.   <u>Class Representative and Class Member Enhancements</u>. Defendants will not oppose an application for: (1)  payment of a Class Representative Enhancement to the Class Representatives (as described in Paragraph 10, above) in an amount not to exceed $5,000.00 each (to be paid from the Gross Settlement Amount); and (2) payment of an enhancement to any Class Member who filed an affirmative opt-in, pre-settlement (as described in Paragraph 11, above) in an amount not to exceed $1,000 each (to be paid from the Gross Settlement Amount), all subject to approval by the Court. The final amount of any enhancement as determined and approved by the Court shall be binding on the Class Representatives and Class Members who affirmatively opted-in under the FLSA. Any enhancement will be treated

as a non-wage payment and reported as such by the Claims Administrator to the appropriate government taxing authorities, with the recipients of the enhancement being solely responsible for paying any and all taxes due on enhancement. The Parties expressly agree that the Court's approval or denial of any request for any enhancement is not a material condition to the Agreement, and is to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement. Any order or proceeding relating to the application by Class Counsel for an award of an enhancement shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of the enhancements requested, the remaining amount will be redistributed to the Settlement Class Members on a pro rata basis.

49. <u>PAGA Penalties</u>. The Parties agree to allocate Three Thousand Dollars ($3,000.00) of the Gross Settlement Amount to the settlement of the PAGA claims alleged in the Lawsuit, which the Parties believe in good faith is a fair and reasonable apportionment. The Claims Administrator shall pay seventy-five percent (75%), or $2,250.00, of this amount to the LWDA. The other twenty-five percent (25%), or $750.00, of this amount shall remain as part of the Net Settlement Fund, to be paid to Settlement Class Members on a pro rata basis according to the criteria described in Paragraph 51, below.

50. <u>Net Settlement Fund</u>. Class Claimants shall be paid their Net Pro Rata Distribution (as defined in Paragraph 51, below) from the Net Settlement Fund, which is the amount remaining of the Gross Settlement Amount after deduction of (1) Claims Administration Charges; (2) Class Counsel Attorneys' Fees and Costs; (3) Class Representative and Class Member Enhancements; and (4) amounts paid to the LWDA for PAGA penalties.

51.     <u>The Net Pro Rata Distribution for each Class Member.</u>  Each
Class Member's allocation will be based upon: (1) the number of SuperCamp
sessions worked by the Class Member; (2) the Class Member's job title with
respect to each of those sessions worked by the Class Member; (3) and the
location with respect to each of those sessions worked by the Class Member
(specifically, whether the SuperCamp session was held inside or outside of
California). With respect to the job title which corresponds to each session
worked by a Class Member, Class Members who worked as Team Leaders,
Senior Team Leaders, Office Coordinators, Logistics Coordinators, and
Wellness Persons will be allocated a higher per-camp-session payment (for all
camps worked in which the Class Members held those job titles) in light of the
comparatively lower wages paid to these Class Members and the comparative
strength of their allegations of misclassification, as compared to those Class
Members who worked for Defendants as Facilitators, Site Administrators,
Site Counselors, and Lead Facilitators. With respect to location of each
SuperCamp session worked by a Class Member, those Class Members who
worked in California shall be allocated a higher per-camp-session payment in
light of the expanded rights and remedies available under California law.

52.     <u>Calculation of Payments to Class Members.</u>   Based on the
forgoing principles, Class Members will receive a proportionate share of the
Net Settlement Fund based on the following formula:

(a)     Each Class Member will receive one (1) share for each
        SuperCamp program the Class Member worked as a Team
        Leader, Senior Team Leader, Office Coordinator,
        Logistics Coordinator, or Wellness Person outside of
        California.

(b)     Each Class Member will receive one-and-one-quarter (1.25) shares for each SuperCamp program the Class Member worked as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, or Wellness Person in California. These Class Members will receive fifty percent (50%) of this allocation if they do not opt out of the California Class. These Class Members will receive the second fifty percent (50%) of this allocation if they also submit to the Claims Administrator a signed consent-to-join form or otherwise file their consent-to-join with the Court.

(c)     Each Class Member will receive a one-half share (0.5) share for each SuperCamp program the Class Member worked as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator outside of California.

(d)     Each Class Member will receive a three-quarters (0.75) share for each SuperCamp program the Class Member worked as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator in California. These Class Members will receive fifty percent (50%) of this allocation if they do not opt out of the California Class. These Class Members will receive the second fifty percent (50%) of this allocation if they also submit to the Claims Administrator a signed consent-to-join form or otherwise file their consent-to-join with the Court.

53.     The Class Members' pro rata shares will be determined by the Claims Adminstrator according to the formula described in Paragraph 52, and

based on the information contained within the Class List provided by Defendants to the Claims Administrator, as described in Paragraph 64. FLSA Class Members (who are not also members of the California Class) must submit a consent-to-join form (or otherwise file their consent-to-join with the Court) to receive any payment. California Class Members will receive fifty percent (50%) of their allocation, reflecting their claims under California law, so long as they do not opt out of the California Class under Rule 23. These Class Members will receive the second fifty percent (50%) of their allocation, representing their claims under the FLSA, if they also consent to join the FLSA Class in writing. If a California Class Member opts out of the California Class and also consents to join the FLSA Class in writing, the Class Member will receive a fifty-percent (50%) allocation, representing only the claims under the FLSA.

54.     Each Settlement Class Member will have his or her Net Pro Rata Distribution apportioned by the Claims Administrator as follows: (a) one-third for payment of any claimed interest (the "Interest Portion"); (b) one-third for payment of any claimed penalties and liquidated damages of any type (the "Penalties Portion"), and (c) one-third for payment of any claimed unpaid wages during the Class Period (the "Gross Wages Portion"). The Claims Administrator will make appropriate deductions from the Gross Wages Portion of each Settlement Class Member's Net Pro Rata Distribution for the payment of employee payroll taxes and deductions required or permitted by applicable law in connection with the payment of wages to the Settlement Class Member and will timely remit those sums to the appropriate government taxing authorities, with the remaining balance of the Gross Wages Portion after such deductions being made being the "Net Wages Portion."

55.     The Claims Administrator will also calculate the total payment of employer payroll taxes due based upon the total Net Pro Rata Distributions, and will effectuate payment of these taxes to the appropriate tax agencies from the funds deposited by Defendants for this purpose in the Qualified Settlement Fund. To the extent the Claims Administrator estimates and Defendants pay a payroll tax amount that is greater than the amount owed to taxing authorities, the balance of this payment will be refunded to Defendants. To the extent the Claims Administrator initially estimates and Defendants pay an insufficient amount to cover the employer's share of all payroll taxes actually due, Defendants will pay the additional amount of payroll tax required within fifteen (15) calendar days of a request for payment by the Claims Administrator.

56.     The Parties are mindful that the total consideration payable hereunder is comprised of a number of separate and distinct claims for damages and penalties by Plaintiffs and the Class Members. Accordingly, having considered the matter in detail, having performed their own separate and independent computations and estimation of the damages and penalties potentially awardable to Plaintiffs and the Class Members at trial, and having done the foregoing with complete and satisfactory access to, and advice from, accounting and legal advisors, the Parties mutually consent and agree that the Net Pro Rata Distribution be apportioned among the Class Members' various wage and non-wage claims in this action as set forth above.  Moreover, the Parties mutually consent and agree, and hereby represent to the Court in this judicially-supervised settlement transaction, that the apportionment of the Net Pro Rata Distributions as stated above is a reasonable and arm's length determination of the character of the Net Pro Rata Distribution for all purposes, including for tax purposes.

57.    All Settlement Class Members (i.e., those Class Members that do not affirmatively opt out under Rule 23 and/or who have opted-in under the FLSA, 29 U.S.C. § 216(b), as applicable) shall be sent a check or checks representing their Net Pro Rata Distribution no later than fifteen (15) days after Defendants deposit the Gross Settlement Amount ($400,000) plus the employer share of payroll taxes in the Qualified Settlement Fund, as described in Paragraph 42. Any Class Member who fails to opt out timely of the California Class as indicated in the Notice, or who has opted into and has not withdrawn from the FLSA Class, shall automatically be deemed a Settlement Class Member whose rights and claims with respect to the issues raised in the Lawsuit are determined by the Court's order granting final approval of this settlement, and by other rulings in the Lawsuit.

58.    The allocations of any Class Members who opt out of, fail to opt in to, and/or withdraw from the settlement ("unclaimed funds") will be allocated pro rata to the Settlement Class Members at the time of settlement disbursement. Any payments made to Settlement Class Members that remain uncashed one hundred eighty (180) days after mailing shall be voided, and the amount of those checks will be distributed to Legal Aid Society – Employment Law Center as the *cy pres* recipient, subject to the Court's approval.

59.    <u>No Additional Contribution by Defendants</u>.    Defendants' monetary obligation under this Agreement is limited to the amount defined as the Gross Settlement Amount, plus the employer's share of payroll taxes. Defendants may not be called upon or required to contribute additional monies above the Gross Settlement Amount plus the employer's share of payroll taxes under any circumstances whatsoever. All costs and expenses arising out of or in connection with the performance of this Agreement shall

be paid from the Gross Settlement Amount and the employer's share of payroll taxes paid by Defendants into the Qualified Settlement Fund, unless expressly provided otherwise herein. In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Action is barred by operation of law, or invalidated, or ordered not to be carried out by a court of competent jurisdiction, Defendants will cease to have any obligation to pay any portion of the Gross Settlement Amount to the Qualified Settlement Fund or any other party under the terms of this Agreement, and all previous disbursements made from Defendants to the Qualified Settlement Fund will immediately revert back to Defendants, less any Claims Administration Charges already incurred, which shall be Defendants' obligation. Notwithstanding the foregoing, Defendants will bear sole responsibility for paying the employer's share of payroll taxes in connection with any payments made under the terms of this Agreement, out of funds separate and apart from the Gross Settlement Amount.

## RECLASSIFICATION OF SUPERCAMP EMPLOYEES

60.    In further consideration for this Agreement, Defendants represent that in light of the claims raised in this case, after final approval of the settlement, they will reclassify domestic Team Leaders, Senior Team Leaders, Logistics Coordinators, Office Coordinators, and Wellness Persons as non-exempt, hourly paid employees. Defendants further represent that, after final approval of the settlement, they will reclassify domestic Facilitators, Lead Facilitators, Site Administrators, and Site Counselors as exempt employees paid on a salary basis.

61.    Defendants represent that, as to all SuperCamp employees, they will comply with state and federal wage-and-hour laws without asserting any

exemption under the organized camp exemption. In the event that state or federal law is amended to provide an exemption that encompasses employees of programs like SuperCamp that offer group-based learning, academic, educational, and/or social programs, Defendants may avail themselves of such an exemption.

## SETTLEMENT ADMINISTRATION

62. The Claims Administrator will administer disbursements from the Gross Settlement Amount paid by Defendants into the Qualified Settlement Fund, including, but not limited to, distributing the Notice of Settlement, calculating claims against the Qualified Settlement Fund, calculating interest owed, calculating the employer's share of payroll taxes owed, preparing and issuing all disbursements to be paid to Class Representatives, Class Members, Class Counsel, the LWDA, and the local state and federal payroll tax authorities, and handling inquiries about the calculation of the Net Pro Rata Distributions. The Claims Administrator shall be responsible for the timely filing of all federal, state and local tax returns of the Qualified Settlement Fund and making the timely payment of any and all taxes and withholdings required with such returns. The Claims Administrator shall establish an email address and toll-free telephone number to direct inquiries regarding the Notice of Settlement and determination of Net Pro Rata Distributions. All questions by Class Members shall be directed to the Claims Administrator. All Claims Administration Charges associated with administering disbursements from the Qualified Settlement Fund including, but not limited to, the fees and costs of the Claims Administrator and the cost of the Notice of Settlement, shall be paid entirely from the Gross Settlement Amount. The Parties expect that the Claims Administrator shall conduct all

administration of all disbursements of the Settlement Amounts and that Class Counsel shall receive no fees or disbursements relating to the administration of disbursements of the Qualified Settlement Fund.

## NOTICE TO THE CLASS AND CLAIMS PROCESS

63.   The Claims Administrator shall disseminate the Notice of Settlement, including the consent-to-join form (as well as a pre-paid return envelope), by first-class United States mail. The Notice of Settlement shall be provided to Class Members in the following manner:

64.   No later than one week after the Court grants preliminary approval of the Settlement, Defendants will provide the Claims Administrator with a database including the following information for each Class Member, in a format acceptable to the Claims Administrator: (1) the name of each Class Member; (2) the Class Member's last known address and telephone number; (3) the Class Member's last known email address from Defendants' electronic employment records (where available); the number of SuperCamp programs worked by each Class Member, including the location of each camp and the job title held by the Class member for each camp; and (4) the Class Member's Social Security number (collectively, the "Class List"). The Class List will be deemed to be designated as Confidential under the Stipulated Protective Order (Dkt. #11) as approved by the Court (Dkt. #12), and subject to the Claims Administrator first signing and returning to Defendants' counsel the Acknowledgment and Agreement to Be Bound attached as Exhibit A to such Stipulated Protective Order.

65.   Within seven (7) days of receiving the Class List from Defendants, the Claims Administrator shall determine the Pro Rata Distribution for each Class Member, according to the formula described in

Paragraph 52, which will be calculated based upon the assumption that every Class Member remains in the Classes, and the Claims Administrator shall provide such determinations to Class Counsel and Defendants' Counsel. Class Counsel and Defendants' Counsel shall jointly review the same to determine if the calculations are consistent with this Agreement.

66.    Within five (5) days of receiving approval from Class Counsel and Defendants' counsel of the preliminary Pro Rata Distribution for each Class Member, the Claims Administrator shall mail to each Class Member the Notice of Settlement. The Claims Administrator will use information that is reasonably available via customary search methods (i.e., National Change of Address database and skip tracing) to update the addresses of Class Members provided by Defendants. With respect to each Notice of Settlement mailed to a Class Member that is returned as undeliverable prior to thirty (30) days after the Notice is originally mailed, the Claims Administrator shall promptly attempt to determine a correct address for the Class Member using a reasonable search method and shall re-send the Notice of Settlement via first-class mail to any new address thereby determined. The Claims Administrator will use reasonable efforts to contact the Class Members to effectuate this Agreement.

67.    <u>Opting Out of California Class</u>. In order for a member of the California Class to validly exclude himself or herself from the California Class and this settlement (i.e., to validly opt out), the member of the California Class must (1) indicate in writing that he or she requests to be excluded from the California Class and this settlement in the manner indicated in the Notice, and (2) mail the written request for exclusion to the Claims Administrator, postmarked no later than ninety (90) days after the date that the Claims Administrator originally mails the Notice of Settlement to

Class Members.  The Parties and their respective counsel agree that none of them will take any steps to encourage any California Class Member to opt out of the California Class.  The date of mailing of the Notice of Settlement, and the date the signed request for exclusion is postmarked, shall be conclusively determined according to the records of the Claims Administrator. Any California Class Member who timely and validly opts out of the California Class and this settlement will not be entitled to any settlement payment, will not be bound by the terms and conditions of this Agreement, and will not have any right to object, appeal or comment thereon. By signing this Agreement, Plaintiffs agree to be bound by the terms herein and further agree not to request to be excluded from the California Class and agree not to object to any of the terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect.

68.   Dispute Process.   Any Class Member who disputes the information shown on his or her Notice of Settlement regarding the number or location of SuperCamp sessions worked, or the job title held during those sessions, may indicate and explain such disagreement under penalty of perjury within ninety (90) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the procedures set forth herein and described in the Notice of Settlement. Any such Class Member must submit documentation relating to his or her dispute. The Claims Administrator shall notify Defendants' Counsel and Class Counsel of any such dispute no later than five (5) days after receiving notice of the dispute. In the case of a dispute, Defendants' records shall control and will have a rebuttable presumption of correctness. For any dispute that arises, counsel for the Parties may stipulate to a resolution, or may stipulate to allow the Claims Administrator to resolve the dispute and make a final and binding

determination without hearing or right of appeal, or may ask the Court to resolve a dispute.

69.   Objections to Settlement.  In order to object to this Agreement, or any term of it, the person making the objection must be a Settlement Class Member, must not opt-out, and must, by no later than ninety (90) days after the original mailing of the Notice of Settlement, mail to the Court, a written statement of the grounds of objection, signed by the objecting Class Member or his or her attorney, along with all supporting papers, in accordance with the instructions in the Notice of Settlement. Any objection that does not meet the requirements of this paragraph shall not be considered by the Court.  Class Members who fail to timely file and serve objections in the manner specified herein shall be deemed to have waived any objections.

70.   The Claims Administrator shall provide the Parties with a weekly update as to the number of returned Notices (if any), opt-outs (if any), and consent-to-join forms it has received. Upon completion of the ninety (90) day time period in which Class Members can timely opt out of the California Class, opt-in under the FLSA, or object to the settlement, the Claims Administrator shall inform the Parties as to the total number of Class Members in each category, if any.

71.   Within seven (7) days after the deadline to object or opt-out, the Claims Administrator shall recalculate the Net Pro Rata Distribution for those Class Members who remain in the Class to determine the final Net Pro Rata Distribution of each Class Claimant. The Claims Administrator shall provide Class Counsel and Defendant's Counsel with a list of all such amounts. Within seven (7) days after receiving the Claims Administrator's report, Class Counsel and Defendant's Counsel shall jointly review the same to determine if the calculations are consistent with this settlement.

72.    Declaration of Compliance.  As soon as practicable, and no later than seven days prior to the hearing regarding final approval of the settlement, the Claims Administrator shall provide Defendants' Counsel and Settlement Class Counsel with a declaration attesting to completion of the notice process (except for any ongoing attempt to obtain valid mailing addresses for, and the resending of, any returned Notices of Settlement) ("Declaration of Compliance").  The Parties agree that compliance with the notice procedures described in this Stipulation constitutes due and sufficient notice to Class Members of this proposed settlement and the hearing regarding final approval of the settlement, and should satisfy the requirement of due process. Nothing else shall be required of, or done by, the Parties, Class Counsel, Defendants' Counsel, or the Claims Administrator to provide notice to the Class of the proposed settlement and the final approval hearing.

73.    Funding of Qualified Settlement Fund.  Assuming the Effective Date has occurred, and as soon as practicable, but no later than one (1) year to the day after the Date of Preliminary Approval, Defendants shall deliver the Gross Settlement Amount, plus the full amount estimated for the employer's share of payroll taxes, to the Claims Administrator for deposit into the Qualified Settlement Fund.

74.    Within five (5) business days of Defendants having deposited in the Qualified Settlement Fund the Gross Settlement Amount, plus the full amount estimated for the employer's share of payroll taxes, as described in Paragraph 73, the Claims Administrator will forward to the Parties a cover letter addressed to the LWDA referencing (i) the LWDA Distribution and (ii) that the Court has given its final approval to the terms of the settlement, including the amount of the LWDA Distribution. The Claims Administrator

shall forward the aforementioned letter and LWDA Distribution to the LWDA in accordance with this Agreement.

75.     Disbursement of Class Counsel Attorneys' Fees and Costs, LWDA Payment, Class Representative Enhancements, Class Member Enhancements, and Claims Administration Charges.  Within five (5) business days after Defendants wire the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, the Claims Administrator shall disburse any court-approved attorneys' fees, costs, the LWDA Distribution, Class Representative Enhancements, Class Member Enhancements, and any unpaid Claims Administration Charges.

76.     Disbursement of Net Pro Rata Distributions.  No later than ten (10) business days after Defendants have deposited the Gross Settlement Amount into the Qualified Settlement Fund, the Claims Administrator will send each Class Claimant, at their last known or provided address, their Net Pro Rata Distribution in the form of (a) a non-payroll check for the combined amounts of the Interest Portion and Penalties Portion of the Pro Rata Distribution and (b) a payroll check in the net amount of the Net Wages Portion of the Pro Rata Distribution. The Claims Administrator shall report all such payments to the appropriate government taxing authorities using the tax reporting forms and methods required under applicable law. The mailing of Net Pro Rata Distributions shall be by first-class United States mail to the last known mailing address of each Class Claimant.

77.     Upon completion of the administration of the settlement under this Agreement, the Claims Administrator shall provide to Defendants' counsel the following: (a) specimens of all form documents sent to Class Members, including the Notice of Settlement; (b) copies of all non-privileged documents actually sent to Class Members, including without limitation,

those itemized in (a), *supra;* (c) a register of all California Class Members who excluded themselves from the settlement and all FLSA Class Members who opted into the settlement; and (d) a register listing all Class Members and the Net Pro Rata Distribution made to each Class Member.

78.    <u>Extension of Time to Pay and/or Process Claims</u>.  Should the Claims Administrator need more time than is provided under this Agreement to complete any of its obligations as set forth in this Agreement, the Claims Administrator may request such additional time in writing (including an explanation of the need for additional time) from Defendants' Counsel and Class Counsel. If Defendants' Counsel and Class Counsel do not agree, in writing, to the Claims Administrator's request for additional time, the Claims Administrator may seek such additional time from the Court.

## RELEASE OF CLAIMS

79.    Plaintiffs and all members of the Settlement Class stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the order of dismissal entered pursuant thereto shall have expressly waived and relinquished the Released Claims.  Members of the California Class who fail to timely submit a consent-to-join form (and who do not timely exclude themselves from the Lawsuit) will release only their claims under California law.

80.    Plaintiffs and all members of the Settlement Class agree not to sue or otherwise make a claim against any of the Released Parties based upon the Released Claims.

81.    All members of the California Class and FLSA Class make this waiver with full knowledge of their rights and with the specific intent to

release all known and unknown claims arising from the facts alleged in the Complaints.

82.     Plaintiffs shall be deemed to have waived their rights under Section 1542 of the California Civil Code, which states:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

83.     For the purposes of effectuating this Agreement only, Plaintiffs and all members of the Settlement Class, also shall be deemed to have acknowledged and agreed that: (1) their claims for compensation for missed meal and rest breaks, overtime compensation, minimum wages, statutory and civil penalties, and any other payments and/or penalties in the Lawsuit are disputed; and (2) the payments set forth herein constitute full payment of any amounts allegedly due to them. Such acknowledgements pertain only to effectuating this Agreement and, if this Agreement fails for any reason, shall be of no effect whatsoever. In light of these acknowledgements for settlement purposes only, Plaintiffs, all members of the California Class and FLSA Class who do not timely and properly exclude themselves from the terms of this Agreement, and all members of the Non-California Subclass, shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto. That section provides in pertinent part as follows:

> "An employer shall not require the execution of any release of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."

84.     Each member of the California Subclass who does not timely and properly exclude himself/herself from the terms of this Agreement, and all members of the Non-California Subclass shall be deemed to have made the foregoing Release as to the Released Claims in this lawsuit as if by manually signing it.

85.     In addition to the release provided above with respect to all Class Members, and for a valuable consideration, the receipt and adequacy of which is hereby acknowledged and except as specifically provided below, Class Representatives Trevor Johnson and Samantha Harmon, on behalf of themselves and each of their heirs, executors, administrators, attorneys, devisees, successors, and assigns, do hereby release and forever discharge the Released Parties of and from any and all claims, causes of action, suits, debts, liens, contracts, judgments, agreements, promises, liabilities, claims, demands, damages, losses, costs, or expenses of any nature whatsoever, known or unknown, fixed or contingent (hereinafter called "Claims"), which Class Representatives now have against the Released Parties, or any of them, by reason of any matter, event, act, omission, cause or thing whatsoever from the beginning of time to the date of this Agreement, including but not limited to any and all Claims relating to or arising out of the hire, employment, demotion, termination or remuneration (including without limitation salary, bonus, incentive or other compensation, sick leave or medical insurance benefits), except vested benefits, of Class Representatives by the Released Parties, including without limitation all Claims arising out of, based upon or relating to the Lawsuit.

86.     Without limiting the generality of the foregoing, the Claims of the Class Representatives released herein include any Claims arising out of, based upon, or in any way related to (i) claims of discrimination, harassment,

and retaliation; (ii) any tort claims, including wrongful discharge, constructive discharge, intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, invasion of privacy, defamation, loss of consortium, breach of fiduciary duty, assault, battery, sexual battery, violation of public policy, or any other common law claim of any kind; (iii) any other violation or alleged violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, as amended, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the California Family Rights Act, the California Fair Employment and Housing Act, the Civil Rights Act of 1866, and the Consolidated Omnibus Budget Reconciliation Act; and (iv) any claim relating to or arising under any other local, state or federal statute, regulation or principle of common law governing the employment of individuals and/or discrimination in employment. This release extends to any and all administrative charges whether before the Equal Employment Opportunity Commission or the Department of Fair Employment and Housing or any other court or agency. Should the Class Representatives ever become a party to any such proceeding against the Released Parties, as a result of claims released in the agreement, he or she shall immediately ask any such administrative agency or court to withdraw any such charge as to him. In consideration of the mutual promises contained herein, the Class Representatives, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, specifically agree to forever fully and finally release, waive, acquit and discharge, to the fullest extent permitted by law, all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known or unknown, including, but not limited to all claims

delineated in the subsequent section below. Further, Class Representatives agree to sign this Agreement and to be bound by the terms herein stated, and further agree not to request to be excluded from the Agreement and agree not to object to any of the terms of the Agreement.

## VOIDING THE AGREEMENT

87.    In the event: (i) the Court does not enter any order specified herein; (ii) the Court does not finally approve the settlement set forth in this Agreement as provided herein; (iii) the Court does not enter an order granting final approval of the settlement set forth in this Agreement and an order of dismissal of the Lawsuit with prejudice as provided herein that becomes final as a result of the occurrence of the Effective Date; or (iv) the settlement set forth in this Agreement does not become final for any other reason, this Agreement shall be null and void *ab initio* and any order entered by the Court in furtherance of the settlement set forth herein shall be treated as withdrawn or vacated by stipulation of the parties. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In the event an appeal is filed from the Court's order granting final approval of the settlement set forth in this Agreement, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

88.    If ten percent (10%) or more of the Class Members timely and affirmatively opt out of this Settlement, Defendants shall have the absolute right, in their sole discretion, and notwithstanding any other provisions of this Agreement, to withdraw from and cancel this Agreement in its entirety, whereupon this Agreement will be null and void for all purposes, and may not

be used or introduced in further litigation. This right can be exercised only by a writing stating clearly that Defendants are canceling, and withdrawing from, this Agreement, which is sent by counsel for Defendants to Class Counsel, Bryan Schwartz Law, Attn: Bryan Schwartz, by facsimile, and by mail, no later than ten (10) business days after the Claims Administrator first notifies counsel of record for Defendants in writing of the total number of opt-outs. If the right provided in this subparagraph is not so exercised, it shall be waived and cannot later be exercised.

## MISCELLANEOUS PROVISIONS

89. <u>Each Party to Bear Own Costs</u>. Except as specifically provided herein, the Parties hereto will bear responsibility for their own attorneys' fees and costs, taxable or otherwise, incurred by them or arising out of this Lawsuit, and will not seek reimbursement thereof from any Party to this Agreement.

90. <u>Severability</u>. If any of the above provisions are found null, void, or inoperative, for any reason, the remaining provisions will remain in full force and effect. Notwithstanding, the invalidation of any material term of this Agreement, including but not limited to all the terms and provisions specified in the Release of Claims, will invalidate this Agreement in its entirety unless the Parties subsequently agree in writing that the remaining provisions will remain in force and effect.

91. <u>Headings</u>. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute any part of this Agreement.

92. <u>No Admission</u>. Neither the acceptance nor the performance by Defendants of the terms of this Agreement nor any of the related negotiations

or proceedings is or shall be claimed to be construed as, or deemed to be an admission by Defendants of the truth of any of the allegations of the lawsuit, the representative character of the Lawsuit, the validity of any of the claims that were or could have been asserted by Plaintiffs and/or Class Members in the Lawsuit, or any liability or guilt of Defendants in the Lawsuit.

93.   <u>Agreement Jointly Prepared</u>.   The Parties and their attorneys have reviewed this Agreement. The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement.   Accordingly, the Parties expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

94.   <u>Non-Evidentiary Use</u>.   Neither the fact of this Agreement, the existence of this Stipulation, the terms of this Agreement, nor any order or action pursuant thereto may be referred to, relied upon, cited, or used as evidence by any of the Parties, Class Members, or their respective counsel in the Lawsuit or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

95.   <u>Amendment or Modification</u>.   Unless otherwise provided herein, this Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

96.   <u>Authorization to Enter Into Stipulation</u>. Each individual signing this Agreement warrants that he or she has the authority and is expressly authorized to enter into this Agreement on behalf of the party for which that individual signs.

97.     The Parties agree that because the Class Members are so numerous, it is impossible or impractical to have each of them execute this Agreement. Accordingly, the Notice of Settlement, which is included within Exhibit A attached to this Agreement, will advise all of the Class Members of the binding nature of the release and that the release shall have the same force and effect as if the Agreement were executed by each of them, whether or not the Notice of Settlement is actually received by the Class Member.

98.     <u>Advice of Counsel</u>.   The Parties to this Agreement are represented by competent counsel, and they have had an opportunity to consult with counsel. The Parties to this Stipulation agree that it reflects their good faith compromise of the claims raised in this action, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

99.     <u>Assignment</u>.   None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Class Member, Class Counsel or Defendants' Counsel without the express written consent of each Party and their respective counsel hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

100.    <u>Governing Law.</u>  This Agreement shall be governed, construed, and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of California, irrespective of the State of California's choice of law principles.

101.    <u>Entire Agreement</u>.   This Agreement and any supplemental written agreement subsequently incorporated constitute the entire Agreement among these Parties, and no oral or written representations, warranties or

inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein. This Agreement, once it is fully executed, supersedes, any and all prior agreements between the Parties, whether written or verbal, including the Parties' "Memorandum of Understanding."

102. <u>Counterparts</u>. This Agreement, and any amendments hereto, may be executed in any number of counterparts and any Party and/or their respective counsel hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

103. <u>Cooperation</u>. The Parties shall cooperate fully with one another in seeking approval of the Court of this Agreement (including all exhibits thereto) and to use their best efforts to consummate the Agreement and cause the Court to enter an order of final approval of the settlement. No Party to this Agreement shall seek to evade his, her or its good faith obligations to seek approval and implementation of the Agreement by virtue of any ruling, order, or other development, whether in the Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses of their relative bargaining power with respect to negotiating.

104. <u>Website.</u> After the court grants preliminary approval of the settlement, Class Counsel will set up a website to provide settlement documents and other case-related documents online for class members' review. Access to the website shall be password protected. Such passwords shall only be provided to Class Members. Any statements Class Counsel

makes on the website about this lawsuit will be factually accurate and not derogatory or disparaging about the company. Statements regarding contrasting views of the claims in this matter are not "derogatory" or "disparaging" for purposes of this Agreement.

105.    To the extent permitted by law, the Court shall retain jurisdiction for the purposes of managing and overseeing the class action settlement set forth in this Agreement and the distribution of funds pursuant thereto.


\*          \*          \*

THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

**IT IS SO STIPULATED AND AGREED:**

*[Signatures on following pages]*

**PLAINTIFFS/CLASS REPRESENTATIVES:**

DATED:   September 12, 2016

Trevor Johnson, Plaintiff/Class
Representative

DATED:   September 12, 2016

Samantha Harmon, Plaintiff/Class
Representative

**DEFENDANTS/INTERESTED
PARTIES:**

**DEFENDANT QUANTUM LEARNING
NETWORK, INC.**

By:

DATED:   September 9, 2016

Name:   Roberta DePorter

Title:   President

DATED:   September 9, 2016

Roberta DePorter, Interested Party

DATED:   September 9, 2016

Joseph Chapon, Interested Party

**COUNSEL:**

DATED:   September 12, 2016          **BRYAN SCHWARTZ LAW**

By: _____

Bryan Schwartz, Esq.

Attorneys for Plaintiffs and the Class

DATED:   September 12, 2016

**PETTIT KOHN INGRASSIA & LUTZ PC**

By: _____

Thomas S. Ingrassia, Esq.

Attorneys for Defendant Quantum Learning
Network, Inc. and Interested Parties Roberta
DePorter and Joseph Chapon

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TREVOR JOHNSON and SAMANTHA HARMON, individually, on behalf of others similarly situated, and on behalf of the general public, | Case No. 5:15-cv-05013-LHK |
| Plaintiffs, | |
| vs. | NOTICE OF CLASS ACTION SETTLEMENT |
| QUANTUM LEARNING NETWORK, INC., a corporation, doing business as SuperCamp; and DOES 1-50, | Honorable Lucy H. Koh |
| Defendants. | |

## IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS

**TO:** ALL INDIVIDUALS WHO HAVE BEEN EMPLOYED BY QUANTUM LEARNING NETWORK (SUPERCAMP) AS A TEAM LEADER, SENIOR TEAM LEADER, OFFICE COORDINATOR, LOGISTICS COORDINATOR, WELLNESS PERSON, FACILITATOR, SITE ADMINISTRATOR, SITE COUNSELOR, OR LEAD FACILITATOR

IN CALIFORNIA FROM OCTOBER 30, 2011, TO AUGUST 20, 2016.

AND/OR OUTSIDE OF CALIFORNIA FROM OCTOBER 31, 2012, TO AUGUST 20, 2016.

**A FEDERAL COURT AUTHORIZED THIS NOTICE. PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY. IT IS NOT A SOLICITATION FROM A LAWYER.**

**YOU COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT IF IT RECEIVES COURT APPROVAL. YOU WILL NEED TO SUBMIT A CONSENT-TO-JOIN FORM BY [90 days from notice date] TO RECEIVE THE MAXIMUM PAYMENT.**

**YOUR ANTICIPATED ALLOCATION OF THE SETTLEMENT IF YOU OPT IN AND THE SETTLEMENT IS APPROVED IS $[XXXX].**

The Settlement will provide $400,000 to pay claims from current and former employees who worked for Quantum Learning Network, Inc. ("QLN") at a SuperCamp program between October 30, 2011 and August 20, 2016, in California, or between October 30, 2012 and August 20, 2016, outside of California, as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, Wellness Person, Facilitator, Site Administrator, Site Counselor, or Lead Facilitator.

**QUESTIONS? CALL CLAIMS ADMINISTRATOR RUST CONSULTING AT [XXX-XXX-XXXX]**

- The Settlement resolves a lawsuit which alleged causes of action against QLN for: (1) failure to pay minimum wage (federal law); (2) failure to pay overtime (federal law); (3) failure to pay minimum wage (California law); (4) failure to pay overtime (California law); (5) failure to provide timely, accurate itemized wage statements; (6) failure to provide and/or authorize meal and rest periods; (7) failure to compensate for all hours worked; (8) failure to pay earned wages upon discharge; (9) unlawful and/or unfair business practices; and (10) penalties under the Private Attorneys General Act of 2004.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

- QLN will not retaliate against you no matter which option you choose under this Settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CONSENT-TO-JOIN FORM** | If you worked for QLN outside of California, you will need to submit a consent-to-join form to receive any payment for those camps. If you worked for QLN in California, you will receive 50% of your settlement allocation for those camps if you do nothing, and another 50% if you also submit a consent-to-join form. By submitting a consent-to-join form, you will give up your right to sue QLN for wage claims under federal law |
| **EXCLUDE YOURSELF (CALIFORNIA CAMP EMPLOYEES ONLY)** | If you worked at least one camp in California, you are a member of the California Class unless you exclude yourself. If you exclude yourself, you will get no payment for your California claims. However, you would be free to pursue those claims separately against QLN. The steps to exclude yourself are explained below. |
| **OBJECT** | You may write to the Court about why you do not like the Settlement. You may also appear in Court and explain why you do not like the Settlement or use an attorney to appear for you. If you object, this does not mean you opt out of the class (in fact, as explained below, if you opt out of the class, you will not be permitted to object to the Settlement terms). |
| **DO NOTHING** | If you do nothing and you only worked at SuperCamp locations outside California, you will not receive a payment, which you would otherwise receive under this settlement, with Court approval. If you do nothing and you worked at least one camp in California, you will receive a payment for your California claims, equal to 50% of your settlement allocation for those camps; however, to get your full settlement allocation you will need to submit a consent-to-join form. |

## DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS.

QUESTIONS?  CALL CLAIMS ADMINISTRATOR RUST CONSULTING AT [XXX-XXX-XXXX]

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** — **PAGE 1**
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this case a class action?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** — **PAGE 2**
5. How do I know if I am part of the Settlement?
6. Are there exceptions to being included?
7. I am still not sure if I am included.

**THE SETTLEMENT BENEFITS – WHAT YOU GET** — **PAGE 2**
8. What does the Settlement provide?
9. How much will my payment be?

**YOU MUST OPT IN TO RECEIVE YOUR MAXIMUM PAYMENT** — **PAGE 3**
10. How can I get a payment?
11. When would I get my payment?
12. What am I giving up to get a payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** — **PAGE 5**
13. How do I get out of the Settlement?
14. What happens if I do nothing?
15. What are the differences between the federal and California claims in this lawsuit?

**THE LAWYERS REPRESENTING THE CLASS** — **PAGE 6**
16. Do I have a lawyer in the case?
17. How will the lawyers and named Plaintiffs be paid?

**OBJECTING TO THE SETTLEMENT** — **PAGE 7**
18. How do I tell the Court that I do not like the Settlement?
19. What is the difference between objecting and excluding yourself from the Settlement ("opting out")?

**THE COURT'S FINAL APPROVAL FAIRNESS HEARING** — **PAGE 8**
20. When and where will the Court decide whether to approve the Settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**GETTING MORE INFORMATION** — **PAGE 8**
23. Are there more details about the Settlement?
24. How do I get more information?

**QUESTIONS? CALL CLAIMS ADMINISTRATOR RUST CONSULTING AT [XXX-XXX-XXXX]**

BASIC INFORMATION

| 1.  Why did I get this notice package? |
| --- |

You may have worked for QLN at any time between October 30, 2011 and August 20, 2016 (in California) or October 30, 2012 and August 20, 2016 (outside of California) (the "Class Periods").

You received this notice because you have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement. If the Court approves it, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the Settlement requires within approximately one year from [Preliminary Approval Date].

This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Trevor Johnson and Samantha Harmon, et al. v. Quantum Learning Network, et al.*, Case No. 5:15-cv-05013-LHK. The people who brought the suit are called Plaintiffs, and the entity that the suit was brought against (QLN) is the Defendant.

| 2.  What is this lawsuit about? |
| --- |

The lawsuit claims that QLN: (1) failed to pay minimum wage; (2) failed to pay overtime; (3) failed to provide complete and accurate wage statements; (4) failed to provide rest and meal breaks; (5) failed to pay all wages due when the employment ended; and (6) failed to pay wages for all time worked.

As a result of this Settlement, QLN will agree to reclassify its Team Leaders, Senior Team Leaders, Office Coordinators, Logistics Coordinators, and Wellness Persons as nonexempt employees who are entitled to minimum wage and overtime. QLN will also agree to pay its Facilitators, Site Administrators, Site Counselors, and Lead Facilitators on a salary basis.

| 3.  Why is this a class action? |
| --- |

In a class action, one or more people, called Class Representatives (in this case Trevor Johnson and Samantha Harmon), sue on behalf of people who have similar claims ("Class Members"). The Court will resolve the issues for all Class Members, except for those who exclude themselves from the Class and/or who fail to submit a consent-to-join form.

| 4.  Why is there a Settlement? |
| --- |

The Court did not issue a final judgment in favor of Plaintiffs or Defendants. Plaintiffs think they could have won more money than the Settlement amount if they went through a trial. Defendants think Plaintiffs would not have won any money at all, at the end of the process, after appeals. But

there was no trial. Instead, both sides agreed to a Settlement. That way, they avoid the cost of a trial and the Class Members will get compensation. The Class Representatives and the attorneys think the Settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

**5.   How do I know if I am part of the Settlement?**

Everyone who fits the following description is a Class Member: all individuals who worked for Quantum Learning Network, Inc. (SuperCamp) in the United States as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, Wellness Person, Facilitator, Site Administrator, Site Counselor, or Lead Facilitator in California from October 30, 2011, to August 20, 2016 and/or outside of California from October 31, 2012, to August 20, 2016.

There are two subclasses in the Settlement: the "FLSA Class" and the "California Class." The California Class includes SuperCamp employees in California from October 30, 2011, to August 20, 2016. The FLSA Class includes SuperCamp employees nationwide from October 30, 2012, to August 20, 2016. You can be a member of both subclasses.

**6.   Are there exceptions to being included?**

You are not a Class Member if you did not work for QLN as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, Wellness Person, Facilitator, Site Administrator, Site Counselor, or Lead Facilitator in the United States during the Class Periods.

**7.   I am still not sure if I am included.**

If you are still not sure whether you are included, you can fill out and return the attached consent-to-join form to see if you qualify to get paid. If you have questions about whether you qualify, you may contact Class Counsel at the contact information provided below.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**8.   What does the Settlement provide?**

QLN has agreed to create a fund of $400,000.00 to be divided among all Class Members who timely submit a consent-to-join form and/or who do not otherwise exclude themselves from the case, and also to be used to pay for Plaintiffs' attorneys' fees and costs, enhancements to the named Plaintiffs, and other payments made pursuant to this Settlement.

**9.   How much will my payment be?**

Your minimum anticipated share of the fund (assuming that you submit a consent-to-join form and do not otherwise exclude yourself from the lawsuit) is listed on the first page of this Notice. The

amount will depend on the number of SuperCamp sessions you worked in the United States during the Class Periods, if those sessions were located in California or outside of California, and the job title you held for each of those sessions.

If you timely submit a consent-to-join form and do not otherwise exclude yourself from the Settlement, you will be allocated one (1) share of the "Net Settlement Amount" (that is, the $400,000 Settlement amount minus the Class Representatives' enhancements, Class Member Enhancements, Class Counsel's attorneys' fees and litigation costs and reasonably related expenses, payments to the California Labor Workforce Development Agency, and the charges and expenses of the Claims Administrator) ("NSA") for each SuperCamp session you worked outside of California as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, or Wellness Person; one-and-one-quarter (1.25) shares of the NSA for each SuperCamp Session you worked in California as a Team Leader, Senior Team Leader, Office Coordinator, Logistics Coordinator, or Wellness Person; a one-half (0.5) share of the NSA for each SuperCamp Session you worked outside California as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator; and a three-quarters (0.75) share of the NSA for each SuperCamp session you worked in California as a Facilitator, Site Administrator, Site Counselor, or Lead Facilitator.

If you worked for at least one SuperCamp located in California, you are a member of the California Class unless you exclude yourself. You will receive 50% of your settlement allocation for each California camp you worked if you do nothing, and the remaining 50% of your settlement allocation for those camps if you submit a consent-to-join form.

The value of each share was calculated by summing the total number of shares allocated to class members as determined above. That total was divided into the NSA to yield a per-share amount. Standard payroll taxes will be taken from one third of your Settlement amount you receive (the minimum amount is listed on the first page of this Notice), to be considered wages for tax purposes—and the other two thirds will be paid to you with an IRS form 1099, to be considered interest and penalties for tax purposes. You alone are responsible to pay any appropriate taxes on the income paid to you via the IRS form 1099.

### YOU MUST OPT IN TO RECEIVE YOUR MAXIMUM PAYMENT

**10. How can I get a payment?**

If you worked for QLN outside of California, you must submit a consent-to-join form to receive any payment for those camps. If you worked for QLN in California, you will receive a 50% payment for your California claims if you do not exclude yourself. To receive your maximum payment, including for your federal claims, you must also submit a consent-to-join form.

A consent-to-join form is attached to this Notice. Print your name, sign it, date it, and mail it to the Claims Administrator, Rust Consulting, postmarked no later than [90 days from notice date].

**11. When would I get my payment?**

As part of the Settlement, QLN will have one year from [Preliminary Approval Date] to make all

required payments to the Settlement fund.

The Court will hold a hearing on [Final Approval Hearing Date and Time] to decide whether to finally approve the Settlement. If the Court approves the Settlement, but there are class members who object, there may be appeals. Resolving any appeals can take time, perhaps more than a year. Please be patient. However, if the Court approves the Settlement at the hearing and there are no appeals, payments will be made to Class Members as soon as QLN makes all required payments to the Settlement fund.

---

### 12. What am I giving up to get a payment?

If you fall within the class definition on page one of this notice and you timely submit a consent-to-join form, you are part of the Class (unless you otherwise exclude yourself). This means that you cannot sue, continue to sue, or be part of any other lawsuit against QLN about the wage-and-hour claims covered by the Settlement or any wage-and-hour claims which arise from the same facts alleged in this lawsuit. It also means that all of the Court's orders will apply to you and legally bind you.

If you worked for QLN in California, unless you exclude yourself from the Settlement, you will be releasing all wage-and-hour claims covered by this Settlement, whether you submit a consent-to-join form or not, except for federal Fair Labor Standards Act claims, which will only be released if you submit a consent-to-join form. However, to receive your maximum payment from the Settlement (including federal claims) you must timely submit a consent-to-join form.

Under the terms of the settlement, you will be releasing QLN (and parties related to them, such as QLN's officers, directors, and shareholders), from all wage-and-hour claims and associated claims alleged (or which could have been alleged based on the same facts) in this lawsuit under state law. If you file a consent-to-join form, you will be releasing the same parties from all such claims under federal law as well. The relevant language from the Settlement Agreement is as follows:

*"Released Claims" means all claims and causes of action that were asserted in the original Complaint, the First Amended Complaint and/or the Second Amended Complaint (collectively, the "Complaints") in the Lawsuit, and any additional wage-and-hour claims that could have been brought based on the facts alleged in the Complaints on behalf of Class Members, through the date of final approval.*

*Plaintiffs and all members of the Settlement Class stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the order of dismissal entered pursuant thereto shall have expressly waived and relinquished the Released Claims. Members of the California Class who fail to timely submit a consent-to-join form (and who do not timely exclude themselves from the Lawsuit) will release only their claims under California law.*

*Plaintiffs and all members of the Settlement Class agree not to sue or otherwise make a claim against any of the Released Parties based upon the Released Claims.*

*All members of the California Class and FLSA Class make this waiver with full knowledge of their*

*rights and with the specific intent to release all known and unknown claims arising from the facts alleged in the Complaints.*

*For the purposes of effectuating this Agreement only, Plaintiffs, and all members of the Settlement Class, also shall be deemed to have acknowledged and agreed that: (1) their claims for compensation for missed meal and rest breaks, overtime compensation, minimum wages, statutory and civil penalties, and any other payments and/or penalties in the Lawsuit are disputed; and (2) the payments set forth herein constitute full payment of any amounts allegedly due to them. Such acknowledgements pertain only to effectuating this Agreement and, if this Agreement fails for any reason, shall be of no effect whatsoever. In light of these acknowledgements for settlement purposes only, Plaintiffs, all members of the California Class and FLSA Class who do not timely and properly exclude themselves from the terms of this Agreement, and all members of the Non-California Subclass, shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto. That section provides in pertinent part as follows:*

> *"An employer shall not require the execution of any release of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."*

*Each member of the California Subclass who does not timely and properly exclude himself/herself from the terms of this Agreement, and all members of the Non-California Subclass shall be deemed to have made the foregoing Release as to the Released Claims in this lawsuit as if by manually signing it.*

You can review the full Settlement Agreement online, at the web address listed in the "Getting More Information" section of this Notice, below. The relevant portion begins on Page 30 of the Settlement Agreement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT (CALIFORNIA ONLY)

If you do not want a payment from this Settlement, but you want to keep the right to sue or continue to sue QLN on your own based on California law, regarding the legal issues in this case, then you must exclude yourself from the Settlement. This is called "opting out" of the California Class. If you exclude yourself from the California Class, you will not receive any money from this Settlement for any claims based on California law.

| **13. How do I get out of the Settlement?** |
| --- |

To exclude yourself from the Settlement, you must send a letter by mail stating that you want to be excluded from *Trevor Johnson and Samantha Harmon, et al. v. Quantum Learning Network, et al.,* Case No. 5:15-cv-05013-LHK. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than [90 days from notice date] to:

Rust Consulting
P.O. Box XXXX

5

City, ST XXXXX-XXXX

If you ask to be excluded you will not get any Settlement payments of any kind and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You will be able to sue or continue to sue QLN in the future. If you have a pending lawsuit, speak to your lawyer in that case immediately. You may need to exclude yourself from this Class to continue your own lawsuit.

| **14. What happens if I do nothing?** |
|---|

If you do nothing regarding this notice, your rights will still be affected. If you do nothing and you only worked for SuperCamp outside of California, you will receive no payment and will retain your right to sue based on federal law. If you do nothing and you worked at least one camp in California, you will receive a payment only for your California claims and release only your California claims. To receive your maximum payment (including California and federal claims), you must also timely return a consent to joint form.

| **15. What are the differences between the federal and California claims in this lawsuit?** |
|---|

The Fair Labor Standards Act is a federal law governing the payment of overtime for hours worked past 40 in a week. It does not have the same provisions that California law has relating to employees taking meal or rest breaks, sick leave, or double-time wages. To receive payment for your federal claims, you must return a consent-to-join form.

In contrast, California law requires overtime to be paid for hours worked past 8 in a day or 40 hours in a week. California also has laws relating to meal breaks and rest breaks. If you worked for SuperCamp in California, do nothing in this lawsuit, and receive a check, you will give up your right to sue based on any California wage law. If you also submit a consent-to-join form, you will receive an increased settlement payment (including payment for your federal claims) and you will also release your federal wage claims under the Fair Labor Standards Act.

## THE LAWYERS REPRESENTING THE CLASS

| **16. Do I have a lawyer in this case?** |
|---|

Bryan Schwartz Law (510-444-9300) represents Class Members. These lawyers are called Class Counsel. These lawyers will be paid from the Settlement amount, so you will not be charged personally for these lawyers' work on this case and in negotiating this Settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **17. How will the lawyers and named Plaintiffs be paid?** |
|---|

Class Counsel will ask the Court to approve the payment of up to $133,333.33 for attorneys' fees and up to $15,000 for costs and expenses associated with investigating the facts, litigating the case, and negotiating the Settlement. A payment not to exceed $20,000 will also be made for the

costs of the Claims Administrator administering the Settlement. A payment of up to $5,000 will be made to each of the two Class Representatives, Trevor Johnson and Samantha Harmon, for their work in bringing this lawsuit and in exchange for them waiving a much broader array of personal claims than you are waiving. In addition, a payment of up to $1,000 will be made to any Class Member who filed an affirmative opt-in, pre-Settlement.

A payment of $2,250 will also be made to the State of California's Labor and Workforce Development Agency to satisfy alleged Labor Code violations pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA").

The Court may award less than these amounts. QLN has agreed not to oppose Class Counsel's request for fees and expenses. If the Court awards less than the amounts described in this section, that money will be distributed to the Class or to an appropriate charity. None of this money will revert to QLN.

### OBJECTING TO THE SETTLEMENT

---

**18. How do I tell the Court if I don't like the Settlement?**

---

If you are a Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to the Settlement in *Trevor Johnson and Samantha Harmon, et al. v. Quantum Learning Network, et al.*, Case No. 5:15-cv-05013-LHK (be sure to include this case name and number in your letter). Be sure to also include your name, address, telephone number, your signature, and the reasons you object to the Settlement. To be considered, you must mail any objection to the Court at the address below, postmarked no later than [90 days from notice date]:

Judge Koh's Case System Administrator
U.S. District Court
280 South First Street, Room 2112
San Jose, CA 95113

---

**19. What's the difference between objecting and excluding yourself from the Settlement or "Opting Out"?**

---

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Settlement or "opting out" is telling the Court that you do not want to be part of the Class or receive any payment at all from the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

QUESTIONS? CALL CLAIMS ADMINISTRATOR RUST CONSULTING AT [XXX-XXX-XXXX]

## THE COURT'S FINAL APPROVAL FAIRNESS HEARING

| 20. When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold a Final Approval Fairness Hearing at [Time & Date], at the United States District Court for the Northern District of California, at 280 South First Street, San Jose, CA 95113, Courtroom 8, before the Honorable Lucy H. Koh. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement.

| 21. Do I have to come to the hearing? |
| --- |

No. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, if you so choose.

| 22. May I speak at the hearing? |
| --- |

You may speak at the Final Approval Fairness Hearing provided that you give advance notice to the Court. To do so, you must send a letter to the Court saying that it is your "Notice of Intention to Appear in *Trevor Johnson and Samantha Harmon, et al. v. Quantum Learning Network, et al.*, Case No. 5:15-cv-05013-LHK." You must include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than [two weeks prior to Final Approval Hearing Date], and be sent to the Court at the address listed in Question 18. You cannot speak at the hearing if you excluded yourself from the Settlement.

## GETTING MORE INFORMATION

| 23. Are there more details about the Settlement? |
| --- |

This notice summarizes the proposed Settlement. More details are in a Settlement Agreement. You can view a copy of the Settlement Agreement and other key documents in this case at the following web address: www.bryanschwartzlaw.com/supercamp. To access this page, you will need to use the password: [*INSERT PASSWORD*].

| 24. How do I get more information? |
| --- |

You can call 1-XXX-XXX-XXXX toll free, or write to Claims Administrator Rust Consulting, P.O. Box XXXX, City ST XXXXX-XXXX.

You may also speak to Class Counsel Bryan Schwartz Law by calling: (510) 444-9300.

## DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TREVOR JOHNSON and SAMANTHA HARMON, individually, on behalf of others similarly situated, and on behalf of the general public, | Case No. 5:15-cv-05013-LHK |
| Plaintiffs, | |
| vs. | **CONSENT TO JOIN FAIR LABOR STANDARDS ACT SETTLEMENT AND RELEASE OF CLAIMS** |
| QUANTUM LEARNING NETWORK, INC., a corporation, doing business as SuperCamp; and DOES 1-50, | |
| Defendants. | Honorable Lucy H. Koh |

***YOU MUST COMPLETE AND SUBMIT THIS FORM BY [90 days from notice date] TO RECOVER YOUR FULL SETTLEMENT ALLOCATION.***

I HEREBY CONSENT to be a party Plaintiff in the lawsuit *Trevor Johnson and Samantha Harmon, et al. v. Quantum Learning Network, et al.*, Case No. 5:15-cv-05013-LHK, to assert claims against the defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, with respect to the work I performed for Quantum Learning Network, Inc. (SuperCamp).

_____

Print Full Name

_____          _____

Signature                                             Date