BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
Logan Starr (SBN 290666)
logan@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
*Attorneys for Individual and Representative*
*Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| TREVOR JOHNSON and SAMANTHA HARMON, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>  vs.<br><br>QUANTUM LEARNING NETWORK, INC., a corporation, doing business as SuperCamp; and DOES 1-50,<br><br>        Defendants. | **Case No. 5:15-cv-05013-LHK**<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed: October 30, 2015<br><br>Date:  February 23, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 8 (4th Floor)<br><br>The Honorable Lucy H. Koh |

# NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing on Plaintiffs' unopposed Motion for an order approving Class Counsel's attorneys' fees and litigation costs, and the requested service awards, will be held on February 23, 2017, at 1:30 p.m. in the Courtroom of the Honorable Lucy H. Koh, located at 280 South First Street, San Jose, CA 95113. At the hearing, Plaintiffs will and hereby do move the Court to approve Class Counsel's fee and cost requests and the requested service awards. Specifically, Class Counsel requests that the Court (a) approve Class Counsel's fee request of $133,333.33 (one-third of the total $400,000 settlement); (b) approve reimbursement of litigation costs in the amount of up to $15,000, and (c) approve the requested service awards of $5,000 each to the Class Representatives and $1,000 to the single pre-settlement opt-in Plaintiff, in accordance with the terms of the Second Amended Settlement Agreement between Plaintiffs and Defendant Quantum Learning Network, Inc. that the Court preliminarily approved by order dated September 23, 2016 (*see* Dkt. #54).

The Motion is based on Plaintiffs' Motion for Approval of Attorneys' Fees, Litigation Costs, and Service Awards; the Memorandum of Points and Authorities in Support Thereof; the Declarations (and exhibits thereto) of Bryan J. Schwartz, Esq., David Borgen, Esq., and Peter Rukin, Esq. in support of the Motion, oral argument of counsel, the complete files and records in the above-captioned action, and such additional matters as the Court may consider.

Dated: December 12, 2016       */s/ Bryan J. Schwartz*
                                    Bryan J. Schwartz
                                    BRYAN SCHWARTZ LAW

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.     INTRODUCTION. ............................................................................................... 1

II.    SUMMARY OF PROPOSED SETTLEMENT TERMS.................................... .2

III.   THE REQUESTED ATTORNEYS' FEES AWARD IS WARRANTED AND
       WELL WITHIN THE COURT'S DISCRETION ........................................... ...3

       A. This Court Is Authorized to Award Fees Equal to One-Third of the
          Common
          Fund…………………………………………………………………3

       B. Class Counsel's Lodestar for Work Performed Already Exceeds One-Third of
          the Recovery, and Class Counsel Anticipates Performing Substantial
          Additional Work to Secure Final Approval of the Settlement. ............................... .5

          1. The Hours Spent By Plaintiff's Counsel Were Reasonably Necessary to Achieve
             the Excellent Result for the Class Members……………………………………..6

          2. Class Counsel's Hourly Rates are Reasonable for Experienced Wage-and-Hour
             Practitioners in the Bay Area Legal Market……………………………………...7

          3. Although a Positive Lodestar Multiplier is Warranted in this Case, Class Counsel
             Seeks Only the Common Fund Recovery, to Maximize the Class Members'
             Recovery……………………………………………………………………………10

       C. Given the Results Obtained and the Risk Borne by Class Counsel, Fees of One-Third of
          the Common Fund are Justified ……………………………………………..11

          1. The Results Achieved for Class Members Support the Fee Request…………....12

          2. Class Counsel Bore Significant Risks in this Litigation………………………..14

          3. Class Counsel Obtained Benefits Above and Beyond the Common Fund by
             Causing Defendants to Change their Personnel Classification Practices………..16

IV.    THE COURT SHOULD AWARD THE REQUESTED LITIGATION COSTS............... 16

V.     THE COURT SHOULD AWARD THE REQUESTED SERVICE AWARDS. ............... 17

VI.    CONCLUSION ................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Authorities</u>

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)……………………………………..13

*Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011)…………………………………8

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008)………………………………………………………6, 8

*Campbell v. National Passenger R.R. Corp.*,
    718 F.Supp.2d 1093 (N.D. Cal. 2010)……………………………………………..8

*Carson v. Billings Police Department*, 470 F.3d 889 (9th Cir. 2006)……………………………..8

*Beckman v. Keybank*, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013)……………………………..13

*Bellinghausen v. Tractor Supply Company*,
    306 F.R.D. 245 (N.D. Cal. 2015)……………………………………………..8, 13, 17

*Boyd et al. v. Bank of America Corp.*,
    13-cv-00561-DOC (C.D. Cal. Jan. 19, 2016)……………………………………9, 10, 15

*Burden v. SelectQuote Insurance Services*,
    2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)……………………………………….5

*Deaver v. Compass Bank,* 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)……………………………….5

*Dent v. ITC Service Group, Inc.*, 2013 WL 5437331 (D. Nev. Sept. 27, 2013)…………………..20

*Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980)……………………………………14

*Dowdell v. City of Apopka, Florida,* 698 F.2d 1181 (11th Cir. 1983) ...................................... 16, 17

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, (N.D. Cal. Jan. 26, 2007). .............. 4, 18

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)……………………………………………17

*Harris v. Vector Marketing Corp.*, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012)………………19, 20

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013)……………………………………..5, 10

*In re Arthur J. Parent, Jr.*, 15-bk-10290-CB (C.D. Cal. Bkr. May 11, 2015)……………………..9

*In re Bank of Am. Wage & Hour Empl. Litig.*,
    2013 WL 6670602 (D. Kan. Dec. 18, 2013)……………………………………19

*In re Bluetooth Headset Products Liability Litig.,*
　　654 F.3d 935 (9th Cir. 2011)..………………………………………………………..4, 5, 11, 16

*In re Heritage Bond Litig.,* 2005 WL 1594403 (C.D. Cal. Jun. 10, 2005)…………………..........15

*In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................... 4,11

*In re Pac. Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995)……………………………………14

*In re United Energy Corp. Sec. Litig.,* 1989 WL 73211 (C.D. Cal. Mar. 9, 1989)………………16

*In re Warner Communications Securities Litig.,*
　　618 F. Supp. 735 (S.D.N.Y. 1985)…………………………………………………………...15

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau,*
　　2009 WL 3562871 (N.D. Cal. Oct. 27, 2009)………………………………………………19

*Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918 (9th Cir. 2014) ………………………………11

*Lee, et al. v. JPMorgan Chase, et al.,* 13-cv-00511-JLS (C.D. Cal. April 28, 2015)………………9

*Li v. A Perfect Day Franchise, Inc.,* 281 F.R.D. 373 (N.D. Cal. 2012)…………………………14

*McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir. 2009) ........................................................ 11

*McPhail v. First Command Fin. Planning, Inc.,*
　　2009 WL 839841 (S.D. Cal. Mar. 30, 2009)…………………………………………………11

*Odrick v. UnionBancal Corp.,* 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012)……………………19

*Romero v. Producers Dairy Foods, Inc.,*
　　2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)…………………………………………………4

*Rutti v. Lojack Corp.,* 2012 WL 3151077 (C.D. Cal. July 31, 2012)……………………...12, 17, 19

*Satchel v. Fed. Express Corp.,* 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)……………………19

*Schiller v. David's Bridal, Inc.,* 2012 WL 2117001 (E.D. Cal. June 11, 2012) …………………11

*Sillah v. Command Int'l Sec. Servs.,* 2016 WL 692830 (N.D. Cal. Feb. 22, 2016)…………………8

*Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1031 (9th Cir. 1990)…………………4

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955 (10th Cir. 2002)……………………17

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)................................................................. 4, 18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010)……………………………...14

*Stuart v. Radioshack Corp.,* 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ................................ 4, 5

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)…………………………………13

*U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990)……………………8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)…………………………..18

*Vincent v. Hughes Air West Inc.*, 557 F.2d 759 (9th Cir. 1977)……………………………...17

*Vizcaino v. Microsoft Corp*., 290 F. 3d 1043 (9th Cir. 2002)………………………………..*passim*

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009)………………………19

*Wren v. RGIS Inventory Specialists,*
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)……………………………………8, 18, 19

*Wright v. Adventures Rolling Cross Country,*
    12-cv-00982 (N.D. Cal. Jan. 24, 2014)……………………………………....5, 9, 14

## State Authorities

*Gentry v. Superior Court*, 42 Cal.4th 443 (2007)…………………………………………21

*Iskanian v. CLS Transp. L.A.*, 59 Cal.4th 348 (2014)……………………………………21

*Martinez v. Combs,* 49 Cal.4th 35 (2010)…………………………………………………14

## Statutes and Regulations

28 U.S.C. § 1920…………………………………………………………………………...17

29 U.S.C. § 200, *et seq*., "Fair Labor Standards Act"……………………………………1

29 U.S.C. § 216(b)…………………………………………………………………………3

Federal Rule of Civil Procedure 23…………………………………………………………7

Federal Rule of Civil Procedure 23(h) ....................................................................... 3, 17

Federal Rule of Civil Procedure 30(b)(6)…………………………………………………7

Federal Rule of Civil Procedure 54(d)……………………………………………………17

## Treatises

*Newberg on Class Actions* § 14.6 (4th ed. 2007)……………………………………..4

Newberg, *Attorney Fee Awards* § 2.19 (1987)…………………………………………16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On September 23, 2016, this Court granted preliminary approval of the terms of the $400,000 common fund settlement, which included Plaintiffs' request for a one-third attorneys' fee award, litigation costs up to $15,000, and service awards to the Class Representatives and the pre-settlement opt-in Plaintiff. As detailed below, a fee award of one third of the common fund is justified by the exceptional results such as those obtained on behalf of the Class here, including not only substantial monetary compensation but also injunctive relief, and the supportive early response to the settlement from Class Members. Moreover, Plaintiffs' request for a one-third fee award is notably less than Class Counsel's lodestar amount, which will increase substantially as Class Counsel continues to field inquiries from Class Members and moves for final approval of the settlement. The modest departure from the Ninth Circuit's benchmark 25% award is well justified here.

Accordingly, as called for under the Second Amended Settlement Agreement (Dkt. #53-1, hereinafter "Settlement"), and in accordance with the Court's Order Granting Preliminary Approval (Dkt. #52), Class Counsel now move for an award of $133,333.33 in attorneys' fees and up to $15,000 for actual litigation costs incurred. The Court should grant this Motion for at least the following reasons:

- *First*, each of the 449 members[1] of the Class is being offered an average net cash payment of approximately $486, which, while modest on its face, is an exceptional result considering that the vast majority of the seasonal, temporary employees were paid only $425 for the entirety of their ten-week camp sessions working for Defendant. This outcome is particularly favorable in light of the financial condition of the Defendant (*see* Dkt. #44-5), which precluded a greater award to the Class.

- *Second*, this litigation has resulted in significant non-monetary relief to the Class, as well as to current and future SuperCamp employees, in that Quantum Learning

---

[1] Since the Court granted preliminary approval, the the Parties have identified additional Class Members who have been sent notice materials as directed by the Court. (*See* Schwartz Decl. ¶8.)

Network has agreed to re-classify its SuperCamp employees as nonexempt from the FLSA and the California Labor Code.

- *Third*, as of the date this Motion is being filed, with well over one month left in the notice period, no Class members have objected to the settlement, approximately one third of Class members have affirmatively consented to join the FLSA Class, and only 2 Class members have filed opt-out requests under Rule 23.

- *Fourth*, the settlement fund is non-reversionary; as such, the allocations of any Class members who decline to joint or opt out of the settlement will be redistributed to participating Class members and, if any payments made to Class members remain uncashed 180 days after mailing, then such payments will be distributed to a worthy *cy pres* recipient.

- *Fifth*, Defendants will pay the employer's share of any payroll taxes, in addition to the $400,000 settlement fund, ensuring that SuperCamp employees will receive the maximum possible allocations.

- *Sixth*, the releases that participating Class members have signed appropriately encompass only claims tied to the facts raised in the suit.

- *Seventh*, Class Counsel's lodestar amount, documented by contemporaneous time records accurate to one tenth of one hour, exceeds the requested one-third award, and will increase substantially in litigating the case through final approval and the distribution of payments to Class members.

For the reasons above, and as further detailed below, the Court should award one third of the $400,000 common fund.

## II.      SUMMARY OF PROPOSED SETTLEMENT TERMS

The terms of this non-reversionary settlement are set forth in more detail in Plaintiffs' preliminary approval briefing. (*See* Dkt. ##39, §IV; 45; 52.)  In addition to attorneys' fees, litigation costs, and service awards, and subject to the Court's approval, the settlement calls for a payment of $2,250 to California's Labor Workforce Development Agency for the PAGA claims (Dkt. #53-1,

¶19), and claims administrator charges to total not more than $20,000 (*id.* ¶6).

The remaining amount – approximately $218,417 ("Net Settlement Amount") – will provide an average net payment of $486 each to the 449 Class members, assuming full participation amongst the FLSA and California Classes. Distribution among the Settlement Class will be done fairly, based on number of camp programs worked by each Class member, the job title held during each camp program, and the location of each camp program. (*Id.* ¶52.) If only half of the Class participates, then participants will receive twice as much – far more than many of them earned during their entire, brief employment with Defendant.

In addition to this significant monetary relief, and as specified in the Settlement, QLN has agreed to reclassify its domestic Team Leaders, Senior Team Leaders, Logistics Coordinators, Office Coordinators, and Wellness Persons as non-exempt, hourly paid employees. (*Id.* ¶60.) QLN has further agreed to reclassify its domestic Facilitators, Lead Facilitators, Site Administrators, and Site Counselors as exempt employees paid on a salary basis. (*Id.*) Moreover, QLN has expressly agreed not to rely on the existing organized camp exemptions under state and federal laws in classifying its SuperCamp employees. (*Id.* ¶61.) This non-monetary relief will greatly benefit current and future SuperCamp employees in the form of increased compensation and improved working conditions, providing a benefit to many Class members in this lawsuit who wish to continue working at QLN's SuperCamp programs.

## III. THE REQUESTED ATTORNEYS' FEES AWARD IS WARRANTED AND WELL WITHIN THE COURT'S DISCRETION

### A. This Court Is Authorized to Award Fees Equal to One-Third of the Common Fund.

In a certified class action such as this one, Federal Rule of Civil Procedure 23(h) authorizes the Court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Similarly, Section 216(b) of the Fair Labor Standards Act provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Here, the Defendants have agreed not to oppose Plaintiffs' request for attorneys'

fees worth $133,333.33, *i.e.*, one-third of the total Settlement amount of $400,000. (*See* Dkt. 53-1, ¶47.) The legal fees agreed upon between the Parties are, like all aspects of the Settlement, subject to the Court's determination of whether the agreement is "fundamentally fair, adequate, and reasonable." *See, e.g.*, *Stuart v. Radioshack Corp.*, 2010 WL 3155645, at *5 (N.D. Cal. Aug. 9, 2010) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)).

In the Ninth Circuit, district courts have the discretion to use either a percentage-of-the-common-fund method or a lodestar method to calculate attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit has explained that, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit's benchmark for fees under the percentage-of-the-common-fund method is 25 percent of the gross settlement amount. *See, e.g.*, *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *14 (N.D. Cal. Jan. 26, 2007). As noted, the Ninth Circuit's 25% benchmark "may be inappropriate in some cases," and "courts cannot rationally apply any particular percentage . . . without reference to all the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (internal quotation and citation omitted). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In fact, "in most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

"'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'" *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)). Consistent with the foregoing, this Court has often awarded attorneys' fees equal to one third of the common fund in analogous wage-and-hour lawsuits. *See, e.g.*, *Wright v. Adventures Rolling Cross Country,* 12-cv-

00982 (N.D. Cal. Jan. 24, 2014) (Dkt. #174) (*See* Schwartz Decl. ¶9(b) & Exhibit B) (awarding attorneys' fees equal to one-third of $500,000 common settlement fund in wage-and-hour class action based on violations of FLSA and California Labor Code in camp exemption case where the defendant raised solvency concerns significantly affecting the settlement, which also provided for injunctive relief); *Deaver v. Compass Bank*, 2015 WL 8526982, at *10 (N.D. Cal. Dec. 11, 2015) (one third of $500,000 common fund in wage-and-hour class action); *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (one-third of $750,000 common fund in wage-and-hour class action); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at *1 (N.D. Cal. Aug. 2, 2013) (same); *Stuart*, 2010 WL 3155645, at **5-6 (approving one-third of $4.5 million settlement fund as fees in class case alleging failure to reimburse employees for expenses).

Among the circumstances the Ninth Circuit has considered relevant are: (1) the results achieved; (2) the riskiness of prosecuting the litigation; (3) whether counsel obtained benefits for the Class above and beyond the cash settlement fund itself, such as by causing the employer to change its personnel classification practices; and (4) the financial burden carried by Class Counsel in prosecuting the case on a contingency basis. *See Vizcaino*, 290 F.3d at 1048-50. "In addition to the aforementioned factors, district courts may also compare the proposed percentage award to the attorney's fee award that would be granted were the district court to use the lodestar method to determine fees." *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1050).

Here, to maximize recovery for the Class and increase the likelihood of Class members' participation in the settlement, Class Counsel is not seeking fees under the lodestar method; instead, Class Counsel seeks a smaller fee award equal to one-third of the common fund.[2] Here, all of the above-described factors that courts in the Ninth Circuit consider when assessing the reasonableness of attorneys' fee requests weigh in favor of approving the requested fees here.

**B. Class Counsel's Lodestar for Work Performed Already Exceeds One-Third of the**

---

[2] In light of *In re Bluetooth*, 654 F.3d 935, and the Court's Order Granting Preliminary Approval (*see* Dkt. #54), Plaintiffs shall post this Motion on the settlement website for Class Members to review.

**Recovery, and Class Counsel Anticipates Performing Substantial Additional Work to Secure Final Approval of the Settlement.**

Class Counsel's lodestar, at present, is $166,620 – over $33,000 more than the requested fee award of $133,333.33. *See* Schwartz Decl. ¶4 & Exhibit A.[3] This figure does not account for the additional approximately 50 hours that counsel expects to spend on this case following submission of this Motion (including the drafting of the final approval motion, the shepherding of the opt-in process for the remaining one-half of the opt-in period (including fielding calls and emails from Class members), appearance at the final approval hearing, and overseeing the distribution process, among other work). *See id.* ¶6. In total, Class Counsel have devoted approximately 397 hours to this case over more than a year so far.[4]

### 1. The Hours Spent By Plaintiff's Counsel Were Reasonably Necessary to Achieve the Excellent Result for the Class Members.

The amount of work that Class Counsel has put into this case was reasonably necessary to ensure that Class members will be compensated and Defendant's business practices are reformed. Schwartz Decl. ¶4. Class Counsel's time spent on this matter was documented contemporaneously using TimeSlips software, tracked to the nearest one-tenth of one hour, seeking to avoid "block billing" and vague entries. *See id.* & Exhibit A. Class Counsel have also carefully reviewed their billing records and exercised appropriate billing discretion as they would for a fee-paying client. *See id.* As shown in the records submitted herewith, Class Counsel worked diligently to achieve a meaningful result for Class members which was never certain, but which ultimately will include significant institutional reforms at SuperCamp in addition to monetary compensation.

In brief, Class Counsel has investigated, researched, and filed the lawsuit and conducted written discovery as well as a deposition of Defendant's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id.* ¶4. Class Counsel then focused its efforts on early settlement

---

[3] "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[4] Class Counsel will submit updated billing records documenting the additional attorneys' fees incurred in conjunction with the motion for final approval.

of the case at mediation to ensure that more of Defendant's limited resources would go toward compensating the Class rather than paying Defendant's legal bills. *Id.* After the day-long mediation with Steve Rottman, Esq. in Los Angeles, which resulted in a memorandum of understanding between the Parties, the Parties engaged in further negotiations which resulted in a long-form settlement agreement. *Id.* The grant of a security interest in the personal residence of Defendant's individual owners was a major victory for the Class in negotiations over the long-form settlement agreement, requiring the expertise of outside bankruptcy counsel, as discussed below in Section IV. *Id.* ¶5.

Class counsel then moved for preliminary approval three times before determining an appropriate opt-in/opt-out process that would satisfy the divergent requirements of the Fair Labor Standards Act and Federal Rule of Civil Procedure 23, while maximizing participation by Class members. *Id.* ¶4. Since the grant of preliminary approval, Counsel has overseen the drafting and mailing of notice to the Class in cooperation with Claims Administrator Rust Consulting and fielded phone calls and emails from Class members. *Id.* Class counsel has also drafted the instant Motion. *Id.* Moreover, as approximately half of the notice period remains, Class Counsel anticipates it will perform substantial additional work to secure final approval. *Id.* ¶6.

In short, Class Counsel has litigated this case vigorously but efficiently, particularly in light of Defendant's financial limitations and the attendant need to reach an early resolution to ensure that Class members could receive meaningful relief. The Ninth Circuit has noted that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050 n.5. Here, it was Class Counsel's pursuit of early settlement ensured the best possible result for the Class.

> **2. Class Counsel's Hourly Rates are Reasonable for Experienced Wage-and-Hour Practitioners in the Bay Area Legal Market.**

Class Counsel's claimed rates are reasonable and appropriate for experienced wage-and-hour attorneys in the San Francisco Bay Area legal market. "A party seeking attorney's fees bears the burden of demonstrating the requested rates are 'in line with the prevailing market rate of the

relevant community.'" *Sillah v. Command Int'l Sec. Servs.*, 2016 WL 692830, at *2 (N.D. Cal. Feb. 22, 2016) (quoting *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979. "Typically, 'affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Sillah*, 2016 WL 692830, at *2 (quoting *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (internal brackets and ellipsis omitted)).

Class Counsel claims 2016 hourly rates of $650 for principal attorney Bryan Schwartz (a 2000 graduate) and $375 for associate attorney Logan Starr (a 2013 graduate), as well as $325 for associate attorney Eduard Meleshinsky (a 2014 graduate) in 2015. These rates are well supported by case law in the Northern District, prior court findings regarding undersigned counsel's rates, and the submitted declarations of leading Bay Area wage-and-hour class action attorneys David Borgen and Peter Rukin. *See Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 264 (N.D. Cal. 2015) (finding that $375 per hour is a reasonable rate for an attorney four years out of law school in a wage-and-hour case); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 921-22 (N.D. Cal. 2011) (five years ago, approving hourly rates ranging from $560-800 for partners and $275-510 for associates in disability rights case as "within the range of prevailing market rates in the Bay Area"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011) (five years ago, approving $650 per hour as a reasonable rate in wage-and-hour class action for attorney with 17 years experience); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F.Supp.2d 1093, 1100 (N.D. Cal. 2010) (six years ago, approving $700 per hour for experienced Bay Area counsel in employment discrimination case). (*See also* Borgen Decl. ¶¶9-11; Rukin Decl. ¶¶6-8.)

Attorney Bryan Schwartz is a highly-respected leader of the plaintiffs' employment Bar in California (having been ranked repeatedly one of the top labor and employment lawyers in California) and is particularly recognized in wage-hour class actions on behalf of workers, routinely speaking and publishing nationally regarding such matters. (Schwartz Decl. ¶9; *see also id.* ¶¶10-12 (describing qualifications of the associate attorneys and paralegals/legal assistants who worked

on this matter).) Mr. Schwartz also serves as the current Chair of the State Bar of California's 7500-member Labor and Employment Section, on the Executive Board of the California Employment Lawyers Association, and in other leadership posts. (*Id.* ¶9.) Mr. Schwartz is also uniquely qualified to litigate this case, after *Wright v. Adventures Rolling Cross Country, Inc.*, 2013 WL 1758815 (N.D. Cal. Apr. 24, 2013) (winning summary judgment against camp exemptions).

David Borgen, a longtime partner with a leading Oakland firm, Goldstein, Borgen, Dardarian & Ho, with extensive experience in wage-and-hour litigation, states that his current hourly rate for such cases is $820, and that rates for partners at his firm range from $565 to $865 per hour. (Borgen Decl. ¶¶1, 6, 7.) Mr. Borgen further provides that associates at his firm charge between $325 and $500 per hour and paralegals and legal assistant rates range from $195 to $300 per hour. (*Id.* ¶7.) These rates have been approved in wage-and-hour settlements by state and federal courts. (*Id.*)

Peter Rukin, a partner with the San Francisco firm Rukin Hyland Doria & Tindall LLP, currently charges an hourly rate of $770 per hour in wage-and-hour class actions, which rate is also paid by hourly paying clients. (Rukin Decl. ¶1, 6.) Mr. Rukin notes that associates at his firm charge hourly rates ranging from $375 for a 2013 graduate and $425 for a 2011 graduate, which rates are also charged to fee-paying clients. (*Id.* ¶6.) Paralegals and legal assistants at Rukin Hyland charge between $200 and $250 per hour. (*Id.*).

Moreover, Class Counsel have routinely had their regular rates awarded by federal courts in California. *See, e.g., Boyd et al. v. Bank of America Corp.*, 13-cv-00561-DOC (C.D. Cal. Jan. 19, 2016) (Dkt. #397) (Schwartz Decl., Exhibit C) (awarding one-third of the common fund, approving $650/hour rate for 2016 for Bryan Schwartz and applying a multiplier of 4.15); *In re Arthur J. Parent, Jr.*, 15-bk-10290-CB (C.D. Cal. Bkr. May 11, 2015) (full fees awarded based upon $625/hour rate for Bryan Schwartz for 2015) (Schwartz Decl., Exhibit D); *Lee, et al. v. JPMorgan Chase, et al.*, 13-cv-00511-JLS (C.D. Cal. April 28, 2015) (Schwartz Decl., Exhibit E) (fees award approved with multiplier; lodestar based upon $625/hour rate for Bryan Schwartz for 2015); *Boyd v. Bank of America Corp.*, 2014 WL 6473804, at **10-11 (C.D. Cal. Nov. 18, 2014) (awarding one-third of common fund, and approving rate of $600 for Bryan Schwartz for 2014 with a 2.58 multiplier). *See also* Schwartz Decl. ¶9(c), citing numerous other matters in a host of courts, in

which Plaintiffs' counsel was awarded fees based upon their usual and customary rate, either as a lodestar cross-check of a common fund award or with a multiplier. Counsel's rates are also paid by clients in non-contingency, hourly-paying matters. *Id.* ¶9. In short, Class Counsel's claimed rates for Mr. Schwarz, Mr. Starr, Mr. Meleshinsky, and the firm's paralegals/legal assistants are well within the reasonable range for the Bay Area, as demonstrated by case law and the declarations of experienced Bay Area wage-and-hour class action counsel, and are appropriate for these attorneys.

### 3. Although a Positive Lodestar Multiplier is Warranted in this Case, Class Counsel Seeks Only the Common Fund Recovery, to Maximize the Class Members' Recovery.

As a general matter, Class Counsel who achieves a favorable settlement is entitled to a positive multiplier to compensate for contingency risk. *Vizcaino*, 290 F.3d at 1051. "Indeed, courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Id.* (internal quotation marks omitted). "'To restrict Class Counsel to the hourly rates they customarily charge for non-contingent work – where payment is assured – would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing. Courts have therefore held that counsel are entitled to a multiplier for risk.'" *Hopkins*, 2013 WL 496358, at *4 (quoting *Vicaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1305 (W.D. Wash. 2001) *aff'd*, 290 F.3d at 1043).

Despite the amount of attorney resources expended in this case, Class Counsel has determined not to seek even their full lodestar amount, to ensure a meaningful recovery for each Class member and substantial reforms by the employer. This is notwithstanding the fact that a significant portion of the relief obtained is prospective and "socially beneficial" but not "easily monetized," suggesting that seeking fees on a lodestar basis would be reasonable. *In re Bluetooth*, 654 F.3d at 941; *see also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir. 2014), *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014), (taking injunctive relief into account in approving a fee award greater than the monetary relief to the class).

The fact that Class Counsel are seeking fees below their lodestar serves to confirm the reasonableness of Class Counsel's request for an upward departure to one third of the common fund ($133,333.33 out of $400,000) from the Ninth Circuit benchmark of 25 percent. *See id.* at 944

("[T]he lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." (citations omitted)).

Despite the risks that undersigned counsel undertook working hundreds of hours without compensation, the quality of representation, and the difficulties of this particular case (where no case law established liability for academic summer programs, and where Defendant teetered on the brink of insolvency), Counsel have achieved meaningful recovery for the Class and future SuperCamp employees. *See Vizcaino*, 290 F.3d at 1051 & n.6 (affirming lodestar multiplier of 3.65 in light of complexity and risk of case and surveying 34 common fund settlements to find that 83% of multipliers were in the 1x- to 4x-range). That Class Counsel's fee request amounts to a negative multiplier, even as Class Counsel anticipates expending roughly 50 hours more through the conclusion of this case, strongly supports a one-third award. *See, e.g.*, *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the reasonableness of the [one-third] fee request."); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) ("[T]he proposed attorneys' fee award [in a common fund class action settlement] is less than Class Counsel's lodestar calculation, buttressing the Court's finding of reasonableness.").

### C. Given the Results Obtained and the Risk Borne by Class Counsel, Fees of One-Third of the Common Fund are Justified.

The ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009); *see also In re Omnivision*, 559 F. Supp. 2d at 1046 ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). Here, compensation merely at the benchmark would undercompensate counsel given the substantial monetary and non-monetary benefits afforded to Class members, and the substantial risks borne by Class Counsel.

#### 1. The Results Achieved for Class Members Support the Fee Request.

Class Counsel has obtained a very favorable settlement in this action, despite the limited prior authority discussing the applicable overtime exemptions in this context. *See Vizcaino*, 290 F.3d at 1048 (obtaining "exceptional results" "in the absence of supporting precedents" is a "relevant

circumstance" for purposes of fee petition). As noted above, the average cash payment to each Class member participating will exceed what most of these employees were paid for their work during each ten-day SuperCamp program. *Id.* ¶2.

Although Class members have until January 18, 2017, to submit their consent-to-join forms to recover the payments attributable to the FLSA, 147 out of 449 Class members (approximately one third) have already submitted forms. *Id.* ¶8. Class Counsel anticipates substantial additional participation by members of the FLSA Class. *Id.* However, Counsel also notes that comparatively low participation rates are a common feature of the FLSA's opt-in procedure, which may serve to dissuade employees from participating. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (noting that "the FLSA opt-in structure excludes apathetic or inertia-bound potential class members who are overcome by the effort required to opt-in but necessarily expressing an opinion on the merits of the case" and citing research for the proposition that, "[h]istorically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in.").

No Class Member has objected to the Settlement or to Class Counsel's claimed fees, though the fees were clearly explained in the Class Notice, and only two have opted not to participate. *See id.* (*See also* Dkt. #53-1 at 52-53 ("Class Counsel will ask the Court to approve the payment of up to $133,333.33 for attorneys' fees and up to $15,000 for costs and expenses associated with investigating the facts, litigating the case, and negotiating the Settlement.").) "[T]he existence or absence of objectors to the requested attorneys' fee [as disclosed in the Class Notice] is a factor is determining the appropriate fee award." *Bellinghausen*, 306 F.R.D. at 261. Nor does Defendant object to the requested fees. Schwartz Decl. ¶13.

To the extent that some Class members do not submit consent-to-join forms to recover their FLSA payments, the funds to which they would have been entitled will be distributed to other members of the Class pro rata, rather than reverting to Defendant. (*See* Dkt. #53-1 ¶58.) *See also Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (explaining that reversionary settlements signal to the district court that class counsel has not put the interests of the class before their own). In addition to obtaining a non-reversionary settlement, Class Counsel obtained Defendant's

agreement to grant Plaintiffs a lien on the primary residence of Defendant's individual owners to ensure the Class members get paid. (*See* Dkt. #53-1 ¶40-43.) Counsel further obtained Defendant's agreement to pay their estimated employer's share of the payroll taxes in advance to the Claims Administrator to reduce the tax burden on Class members. (*See id.* ¶40.) The skill and quality of Class Counsel's work is a relevant factor in assessing reasonable attorneys' fees, and weighs in favor of approving the fees requested in this case.

The Settlement is also favorable given that it is the maximum amount that Defendant was able to pay without filing for bankruptcy. (*See* Dkt. #44-5; *see also* Schwartz Decl. ¶5.). The fact that the compensation obtained was lower than it might otherwise have been as a result of Defendant's limited solvency does not weigh in favor of reducing counsel's requested fees (which are already less than Counsel's lodestar); on the contrary, Courts have recognized that counsel should be compensated for their willingness to vindicate the rights of employees of financially precarious entities. *See, e.g., Beckman v. Keybank*, 2013 WL 1803736, at **12, 15 (S.D.N.Y. Apr. 29, 2013) (approving fees of 33% of fund, noting that class counsel "faced the general risk of recovery, namely, non-collection because of potential bankruptcy"); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, (9th Cir. 1993) ("Class counsel, however, have the case on a contingency. Moreover, it is a double contingency; first, they must prevail on the class claims, and then they must find some way to collect what they win."). If, as a result of limited recovery based upon a defendant's potential insolvency, Courts reduce fees to a point at which attorneys lack the incentive to litigate a case, the rights of employees of such entities will cease to be enforced by competent counsel.

Class Counsel submits that, based upon their significant experience litigating wage-and-hour class and collective actions, the Settlement is a substantial recovery for the Class, and weighs in favor of approving the fee request. Schwartz Decl. ¶2.

### 2. Class Counsel Bore Significant Risks in this Litigation.

This case is not one in which a substantial settlement and a recovery of a large attorney's fee was a foregone conclusion. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)

(recognizing importance of incentivizing qualified attorneys to devote their time to complex, time-consuming cases in which they risk nonpayment); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance.").

Although Class Counsel has previously successfully litigated the organized camp exemptions in *Wright*, 2013 WL 1758815, in that case the Court stated that its "discussion [] as to the applicability of the recreational establishment/organized camp exemption demonstrates that the issue is a close one in which reasonable minds can differ." *Id.* at *9. Thus, it was far from certain that the exemptions would be similarly interpreted with respect to notably different facts in this case, involving an academic summer program as opposed to an international youth travel program.

Beyond this legal uncertainty surrounding the organized camp exemptions, Class Counsel faced additional risk in the possible need to: litigate joint employer issues to create individual owner liability (always an uncertain prospect, particularly in California, after *Martinez v. Combs,* 49 Cal.4th 35 (2010); *see Li v. A Perfect Day Franchise, Inc.,* 281 F.R.D. 373, 401-02 (N.D. Cal. 2012); and the presence of arbitration agreements signed by Class members, which might not have been interpreted to permit class claims at all, under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010). *See* Dkt. #30-2 at 16-18. The presence of complex and novel issues, as well as significant risk of non-recovery strongly supports an upward departure here. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("[T]hirty-three percent[] for attorneys' fees is justified because of the complexity of the issues and the risks.").

Defendant's financial condition (*see* Dkt. #44-5) also substantially increased the risk of non-recovery, because "the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures." *In re Warner Comm'cns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (internal quotation marks omitted); *see also* Rukin Decl. ¶8. Defendant's finances further created a situation where the only way for the Class to recover any meaningful compensation would be through Defendant's individual owners. Accordingly, absent this settlement, Plaintiffs would have needed to prove that the individual owners, who are not even named in the current complaint, qualified as joint employers under federal and California law, or are alter egos, to recover from their individual assets. *See* Schwartz Decl. ¶5. That Plaintiffs could

have obtained a security interest in these owners' *primary residence*, absent this settlement, was extremely unlikely.

Furthermore, as a small firm with (at most) five attorneys during the course of this litigation, the risks assumed by Class Counsel were particularly significant. *See Boyd*, 2014 WL 6473804, at *10 ("Firms of [fewer than 15 attorneys] face even greater risks in litigating large class actions with no guarantee of payment."). Class Counsel was obligated to assure that sufficient attorney resources were dedicated to the prosecution of this litigation. *See* Schwartz Decl. ¶2. Invariably, this dedication of resources minimized Counsel's ability to work on cases the outcome of which was more certain. To date, Class Counsel has not received any compensation or reimbursement for their efforts in prosecuting the action on behalf of the Class, and have advanced all expenses. *Id.* ¶¶4, 7. The significant outlay of monetary and personnel resources has been wholly dependent upon obtaining a substantial recovery for the Class. *In re Heritage Bond Litig.,* 2005 WL 1594403, at *21 (C.D. Cal. Jun. 10, 2005) ("[T]he Court notes that Plaintiffs' counsel proceeded entirely on contingency basis, while paying for all expenses incurred. There was no guarantee of any recovery, and thus, counsel was subjected to considerable risk of no compensation for time or no reimbursement for expenses."); *see also* Borgen Decl. ¶13 ("[FLSA] cases demand an enormous time commitment of work and resources on an entirely contingent fee basis."). In this context, the substantial litigation risks assumed by Class Counsel and the contingent nature of the representation further bolster the request for an upward departure from the benchmark.

### 3. Class Counsel Obtained Benefits Above and Beyond the Common Fund by Causing Defendants to Change their Personnel Classification Practices.

Awarding an upward departure from the benchmark of 25 percent in a common fund case is particularly appropriate when the benefits to the class are not limited to the settlement fund itself. *See In re Bluetooth*, 654 F.3d at 941. "Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in the fee analysis. *Vizcaino*, 290 F.3d at 1049. Likewise, when a case benefits "workers nationwide [in addition to the Class itself] by clarifying the law," this also weighs in favor of granting increased fees. *Id.*

Here, Class Counsel brought a lawsuit that resulted in the Defendant changing its classification of all SuperCamp employees, who had been paid on a per-camp basis without tracking their long hours worked. Minimum wages and overtime will continue to be paid to members of the Class who work for Defendant again in the future, resulting in benefits to the Class that are not easy to monetize but that are in addition to the common fund. In addition, since this is the first case known in the academic summer program sphere, Defendant's competitors may take note of their reclassification of workers as non-exempt, and the settlement may affect this industry across the country. These facts further weigh in favor of granting the requested modest upward departure from the 25 percent benchmark to the one-third fee award sought.

## IV.   THE COURT SHOULD AWARD THE REQUESTED LITIGATION COSTS.

Class Counsel requests reimbursement for reasonably and necessary litigation expenses not to exceed $15,000.[5] Reimbursement for these expenses from the common fund is appropriate, as all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal costs of litigation for which counsel traditionally bill their paying clients. *See, e.g., In re United Energy Corp. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989) (quoting Newberg, *Attorney Fee Awards* § 2.19 (1987)); *see also Vincent v. Hughes Air West Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("[T]he doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves."); *Bellinghausen*, 306 F.R.D. at 265 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."). Furthermore, attorneys may be reimbursed for reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *Rutti*, 2012 WL

---

[5] Counsel will provide a supplemental declaration prior to final approval containing the precise, final amount of costs incurred, which is likely to be less than the full $15,000 allocated.

3151077, at *12 ("Reasonable litigation expenses are ordinarily included in an award of attorneys' fees pursuant to the FLSA.").

The recovery of costs is to include all out-of-pocket costs not part of overhead which are typically billed to a client. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) ("Under the FLSA, costs include reasonable out-of-pocket expenses. [Citation.] They can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920."); *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1190 n.13 (11th Cir. 1983) (explaining, in civil rights class action, that "expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ."); *Rutti*, 2012 WL 3151077, at *12 ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.").  In this case, all of the categories of costs sought by Plaintiffs are typically billed to a client. (*See* Schwartz Decl. ¶7.)

Furthermore, the amount of costs requested here is reasonable. Class Counsel has documented expenses worth $12,740.10 in the submitted TimeSlips records. (*See* Schwartz Decl. ¶¶4, 7 & Exhibit A.)[6] These costs include filing fees, photocopies, legal research, necessary travel for counsel to attend the deposition and mediation, and deposition and mediation costs. (*Id.* ¶7) Class Counsel's claimed costs also include fees paid to outside bankruptcy counsel Daniel H. Reiss, of the firm Levine, Neale, Bender, Yoo and Brill L.L.P. in Los Angeles, for his counsel and assistance in creating a security interest to guarantee the class members' recovery. (*Id.* ¶¶ 5, 7.) Based upon the declaration of Class Counsel and exhibits thereto, the costs for which reimbursement is requested have been adequately documented and were reasonably incurred for the benefit of the Class. The Court should not hesitate in awarding them.

## V.     THE COURT SHOULD AWARD THE REQUESTED SERVICE AWARDS.

---

[6] These costs are separate and apart from the up-to-$20,000 in costs for administration of the settlement by Rust Consulting, reimbursement for which will be sought in the motion for final approval.

"It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren*, 2011 WL 1230826, at *31. The Class Representatives' modest service awards are justified under the case law and the facts of this case. *See, e.g., Staton*, 327 F.3d 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass*, 2007 WL 221862, at *16 (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id.* at 299.

These factors (with the exception of the duration of the litigation) all support the need for enhancement payments to the Class Representatives here. Moreover, the requested $5,000 amounts for the service awards (1.25% of the common fund each) are considered presumptively reasonable in the Northern District. *Odrick v. UnionBancal Corp.*, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) ("In this district, a $5,000 [incentive] payment is presumptively reasonable."); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that [for] incentive payments . . . as a general matter, $5,000 is a reasonable amount."); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) ("[In] this district . . . a $5,000 [incentive] payment is presumptively reasonable.").

First, Plaintiffs Johnson and Harmon experienced financial and reputational risk and harms as a result of bringing this case, by severing ties with the SuperCamp organization and community, damaging friendships with former co-workers, and losing a source of job references and future employment opportunities. *See* Johnson Decl. (Dkt. #39-6) ¶¶8-9; Harmon Decl. (Dkt. 39-5) ¶¶8-10; *see also Rutti*, 2012 WL 3151077, at *5 (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when

the suit requires an affirmative opt-in, as does the FLSA"). These strong disincentives are sufficient to support a small payment of $1,000 to the single FLSA opt-in plaintiff in this case, who assumed similar reputational risks in stepping forward publicly to support the Class Representatives and other SuperCamp employees. *See, e.g.*, *In re Bank of Am. Wage & Hour Empl. Litig.*, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) ($300-$1,000 each to class member participants); *Wren*, 2011 WL 1230826, at *31 (approving $2,500 payment to single FLSA opt-in plaintiff and $5,000 each to named plaintiffs); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $1,000 service payments to non-representative class members who participated in the litigation); *Satchel v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ($5,000 each to 18 class members who participated). During the opt-in process, Class Counsel has received multiple phone calls from Class members who are deeply concerned about coming forward publicly to accept payment from the settlement fund, despite Defendant's assurances that Class members will suffer no adverse consequences for participation. Schwartz Decl. ¶8.

Second, the Class Representatives experienced "notoriety" within the close-knit community of SuperCamp alumni, resulting in stress and anxiety. *See* Johnson Decl. ¶8-9; Harmon Decl. ¶8-9. The two named Plaintiffs and a single opt-in Plaintiff were the only Class members to step forward in this case, despite the substantial efforts of the Class Representatives to reach out to other former SuperCamp employees, who frequently cited fear of reputational harm as their only reason not to join the lawsuit. *See* Schwartz Decl. ISO Preliminary Approval (Dkt. #39-1), ¶8; Johnson Decl. ¶9; Harmon Decl. ¶8-9.

Third, the Class Representatives estimate that they have each spent over 50 hours of time on this case, including participating in the mediation, reviewing pleadings and agreements, and the time to consult extensively with Plaintiffs' counsel about the case, both before and after the case was filed. Schwartz Decl. ISO Preliminary Approval ¶8; Johnson Decl. ¶7; Harmon Decl. ¶5. Plaintiffs were the only Class members actively involved in the suit – meaning that not one SuperCamp employee would have recovered anything if it were not for their efforts. This factor, too, weighs heavily in favor of a the enhancement.

Fourth, the personal benefit that the Class Representatives would receive if they received the same Settlement Payment as the rest of the Class would not come close to compensating them for the foregoing personal costs they have paid in order to benefit the Class. In addition, Plaintiffs will not personally benefit from QLN's reclassification of SuperCamp employees, although future SuperCamp employees (and possibly other employees in the industry) will enjoy that benefit as a result of the Class Representatives' willingness to step forward and prosecute this case.

Finally, Plaintiffs Johnson and Harmon are executing a much broader waiver of claims than other Class members, warranting additional compensation. (Dkt. #53-1 ¶¶79-86.). *See Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding $15,000 service payment in part because wage-and-hour plaintiff signed a general release); *Harris*, 2012 WL 381202, at *7 (explaining that $12,500 service award to wage-and-hour class representative is justified, in part, because "unlike the rest of the class, [Class Representative] is giving [the employer] a release of all claims"). In sum, undersigned counsel believes that the presumptively-reasonable $5,000 amount is the minimum enhancement in a case of this nature which would viably promote the public policy interest in encouraging those with wage-and-hour claims to assert them despite the fears associated with doing so. Schwartz Decl. ISO Preliminary Approval ¶8; *see also Gentry v. Superior Court*, 42 Cal.4th 443, 459-61 (2007), *abrogated on other grounds by Iskanian v. CLS Transp. L.A.*, 59 Cal.4th 348 (2014), (discussing challenges faced by employees who sue their employers for wage violations). Similarly, Class Counsel also believes that $1,000 is the minimum payment required for the single pre-settlement opt-in plaintiff who risked her reputation when other SuperCamp employees would not. Schwartz Decl. ISO Preliminary Approval ¶9. For the foregoing reasons, the Court should award the requested service awards.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) approve Class Counsel's request for an award of attorneys' fees in the amount of $133,333.33; (2) approve Class Counsel's request for reimbursement of litigation costs in an amount up to $15,000; and (3) approve the service awards of $5,000 each to the Class Representatives and $1,000 to the single pre-settlement opt-in Plaintiff.

Dated: December 12, 2016           /s/ *Bryan J. Schwartz*
                                   Bryan J. Schwartz
                                   BRYAN SCHWARTZ LAW