UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| TREVOR JOHNSON, ET AL., | Case No. 15-CV-05013-LHK |
|---|---|
| Plaintiffs, | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS** |
| v. | |
| QUANTUM LEARNING NETWORK, INC., | |
| Defendant. | |
| | Re: Dkt. Nos. 55, 59 |

This matter is before the Court on Plaintiffs' motion for final approval of the proposed class action settlement ("Settlement"), ECF No. 53-1 ("Settlement Agreement"), between individual and representative Plaintiffs Trevor Johnson and Samantha Harmon, and the Class they represent ("collectively, "Plaintiffs"), and Defendant Quantum Learning Network, Inc. ("QLN" or "Defendant"). *See* ECF No. 59 ("Mot. for Final Approval"). Class Counsel has also filed a motion for approval of attorney's fees, costs, and Class Representative awards. *See* ECF No. 55 ("Mot. for Atty's Fees"). Defendant does not oppose either motion. The Court held a final approval hearing on February 23, 2017.

Having considered these motions, the parties' Settlement Agreement, the record in this

1

case, and the arguments at the Final Approval Hearing, IT IS HEREBY ORDERED as follows:

Unless otherwise defined herein, all terms shall have the meaning as set forth in the Settlement Agreement.

The Court has jurisdiction over the subject matter of the Settlement Agreement with respect to and over all parties to the Settlement Agreement, including all Class Members and Defendant.

## I.   The Settlement is Fair, Adequate, and Reasonable

In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (setting forth the standard for a district court's approval of a class action settlement).  A district court may consider some or all of the following factors when making the determination:  "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625.  The Court finds that the Settlement is fair, adequate, and reasonable in light of these factors.

First, the Settlement reflects the strength of Plaintiffs' case as well as the Defendant's position.  Courts have noted that uncertainty favors approval of a settlement. *See, e.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). Here, there were several uncertainties with regard to Plaintiffs' case.  For example, Class Members were required to sign arbitration agreements as a condition of employment with QLN, and QLN moved to compel arbitration prior to the parties' agreement to settle.  *See* ECF No. 30.

Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

Moreover, there is a question of whether the "organized camp" exemptions under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(3), and the California Labor Code, Cal. Lab. Code § 1182.4, apply to QLN's "SuperCamp" employees. Finally, QLN is in a precarious financial situation, and thus there is a risk of non-recovery if the parties were to proceed through litigation. *See Torrisi*, 8 F.3d at 1376 (noting that the defendant's precarious financial condition was a factor that "predominate[d] to make clear that the district court acted within its discretion" in approving a class action settlement). The Court is also satisfied that the Settlement was reached after arm's length negotiations by capable counsel, aided by an experienced mediator, and was not a product of fraud, overreaching, or collusion among the parties. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Second, the risks, expense, complexity, and likely duration of further litigation also support final approval. Had litigation proceeded without settlement, the parties would have had to litigate QLN's motion to compel arbitration. Further, if the Court denied QLN's motion to compel arbitration, Plaintiffs would have had to move for class certification, the parties would have filed for summary judgment, and Plaintiffs would have likely needed to undertake significantly more discovery. Further, continued litigation was particularly risky here given QLN's questionable solvency and potential bankruptcy. Continued litigation would also have placed QLN in a more precarious financial situation, and would have risked non-payment to class members. Taken together, these circumstances suggest that further litigation would have been costly and risky. By contrast, the Settlement provides Class Members with timely and certain recovery, and allocates QLN's limited funds to Class Members as opposed to continued litigation.

Third, the monetary and non-monetary returns in the Settlement weigh in favor of final approval. Plaintiff represents that if Plaintiff's request for attorney's fees (33.33% of the settlement fund) is granted, then Class Members would receive approximately $580. However, because the Court is awarding only 28% of the common fund to Class Counsel, as discussed further *infra*, Class Members will receive even more. Given the risks and uncertainties of

3
Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

litigation and the potential insolvency of QLN, the certainty of cash in hand for Class Members weighs in favor of final approval. Moreover, QLN has agreed to pay the employer's share of any payroll taxes. Notably, in addition to this monetary benefit, QLN "will reclassify domestic Team Leaders, Senior Team Leaders, Logistic Coordinators, Office Coordinators, and Wellness Persons as non-exempt, hourly paid employees." Settlement Agreement, ¶ 60. QLN will also "reclassify domestic Facilitators, Lead Facilitators, Site Administrators, and Site Counselors as exempt employees paid on a salary basis." *Id.* Further, QLN will not "assert[] any exemption under the organized camp exemption" for its SuperCamp employees. *Id.* ¶ 61. This non-monetary relief will benefit current and future SuperCamp employees, and weighs in favor of final approval.

Fourth, the extent of discovery completed and the stage of proceedings support approval. Plaintiffs took the deposition of QLNs' 30(b)(6) witness, QLN produced its company policies to Plaintiffs, and QLN "provided extensive informal discovery in anticipation of mediation, including class data for purposes of calculating damages and detailed financial records to allow Plaintiffs to assess QLN's ability to satisfy a judgment." Final Approval Mot. at 20. Discovery was thus underway, and both parties had developed a perspective on the strengths and weaknesses of the parties' respective cases.

Fifth, the experience and views of counsel weigh in favor of final approval. The parties have been represented by experienced counsel, and all counsel favor settlement.

Finally, the reaction of Class Members supports final approval. Out of 449 potential class members, none submitted an objection. Further, out of 310 potential members of the California subclass, only two opted out. *See* ECF No. 64 ("Supp. Rust Decl."), at ¶ 6. The lack of objections and the low rate of opt-outs (less than 1%) are "indicia of the approval of the class." *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8 (W.D. Wash. Mar. 26, 2001) (finding indicia of approval when 9 class members out of 37,155, or just over .02%, who received notice submitted objections, and "less than 1%" opted out); *see also Churchhill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of

90,000 class members objected to the settlement (0.5%), and 500 class members opted out (.56%)).

With regards to the FLSA subclass, 254 individuals submitted Consent to Join forms, out of a potential 449 Class Members. *See* Supp. Rust. Decl. ¶ 4. This represents a participation rate of approximately 57%. *See id.*; *see also* ECF No. 63 ("Supp. Schwartz Decl."), ¶ 3. This participation rate also weighs in favor of final approval. *See Gribble v. Cool Transports, Inc.*, 2008 WL 5281665, at *1 (C.D. Cal. Dec. 15, 2008) (granting final approval to FLSA class where the participation rate for two settlement classes was 55% and 58%).

Accordingly, the Court finds that the Settlement is fair, adequate, and reasonable within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure.

## II. The Notice and Notice Methodology Were Appropriate

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the parties provide Class Members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

The Court finds that the notice program, previously approved by the Court, *see* ECF No. 54, has been implemented and complies with Rule 23(c)(2)(B). Notice was sent to all Class Members via first class mail. *See* ECF No. 61 ("Rust Decl."), ¶ 11. The notice provided a clear description of the Class as well as Class Members' rights and options. *See id.*, Ex. A. The notice explained how to opt out of the Settlement, how to object to the Settlement, and how to contact Class Counsel and the Notice Administrator. The notice and notice methodology were thus

5

Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice.

## III. The Allocation Plan is Fair, Adequate, and Reasonable

The allocation plan provides payment to the California Labor & Workforce Development Agency ("LWDA") and the Class Administrator in accordance with the terms of the Settlement Agreement and pursuant to California law. The allocation plan then provides payment for attorney's fees and other costs in accordance with the terms of the settlement agreement. Finally, the remainder of the settlement fund is to be distributed among Class Members. *See* Settlement Agreement, ¶¶ 44–59.

The Class Members are composed of two subclasses: (1) the California Class; and (2) the FLSA Class. *Id.* ¶ 1. The Settlement will provide each Class Member with a proportionate share based upon the following factors: (1) the number of SuperCamp sessions worked; (2) the Class Members' job titles with respect to each of those sessions worked; (3) the location with respect to each of those sessions worked by the Class Member (specifically, whether the Class Member worked in California or outside of California). *See id.* ¶¶ 51, 52. There will be no reversion of funds back to QLN.

Courts within this district have held that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Consistent with the reasoning of these decisions, the Court finds the proposed allocation plan to be fair, adequate, and reasonable.

## IV. An Attorney's Fee Award of 28% of the Common Fund is Reasonable

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but [] 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (ellipses in original). To guard against an

6

unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Where the percentage-of-recovery method is employed, it is well established that 25% of a common fund is the benchmark award of attorney's fees. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers*, 904 F.2 at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048. Upward departures may be warranted in particular circumstances, while downward departures may be warranted where there is no "realistic risk of nonrecovery." *In re Quantum Health Res.*, 962 F. Supp. 1254, 1257–58 (C.D. Cal. 1997).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 940 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941–42.

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048–50.

Here, Class Counsel requests 33.33% of the $400,000 Settlement, or $133,333.33. *See* Mot. for Atty's Fees at 7. This is above the Ninth Circuit's benchmark of 25% for attorney's fees

7

1  under the percentage-of-recovery method. *See In re Bluetooth*, 654 F.3d at 942. Moreover, this is
2  also above the "'usual range' for fee awards in percentage cases," which is generally 20 to 30
3  percent. *See de Mira v. Heartland Empl. Serv., LLC*, 2014 WL 1026282, at *4 (N.D. Cal. Mar.
4  13, 2014) (citing *Vizcaino*, 290 F.3d at 1047). Class Counsel asserts that judges in this district
5  have "often awarded attorneys' fees equal to one third of the common fund in analogous wage-
6  and-hour lawsuits." Mot. for Atty's Fees at 10–11. However, cases in which courts have awarded
7  30% or more of the common fund have usually involved "extensive litigation" prior to settlement.
8  *See, e.g.*, *Deaver v. Compass Bank*, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015)
9  (awarding 33.33% of the common fund where class counsel had litigated "multiple motions to
10 remand, dismiss and transfer, as well as a Ninth Circuit Appeal," prior to settlement); *Burden v.
11 SelectQuote Ins. Servs.*, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the
12 common fund where Class Counsel obtained a settlement "of approximately 75% of the maximum
13 damages available after significant motions practice"). Here, the parties settled before Plaintiffs
14 filed a response in opposition to QLN's motion to compel arbitration, and Plaintiffs engaged in no
15 motion practice other than motions for settlement approval. Accordingly, as discussed more fully
16 below, the Court finds that an award of 28% of the common fund, or $112,000, is more
17 appropriate given the circumstances of this case and the early stage at which this case settled. *See
18 de Mira, LLC*, 2014 WL 1026282, at *3 (granting 28% award where the plaintiffs obtained
19 significant results but the parties "did not engage in motion practice before settlement, engaged in
20 some written discovery . . . and attended two depositions"). The factors in *Vizcaino* discussed
21 below support an award of 28% of the common fund.
22     First, Class Counsel has achieved significant monetary and non-monetary results in this
23 case. As discussed above, Class Counsel achieved a settlement in the amount of $400,000, which
24 was made available to a potential class of 449 people. The fund is non-reversionary, and thus the
25 entire Net Settlement Fund (after deductions for attorney's fees, costs, incentive awards, and
26 administrative costs) will be fully paid to the 376 Class members who have opted in to the FLSA

8
Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN
PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

1   Class and who have not opted out of the California Class.  Thus, if this Court awards Class

2   Counsel's request for attorney's fees (33.33% of the Settlement Fund), then each participating

3   Class Member would receive approximately $580.  As discussed further below, because the Court

4   finds that 28% of the Common Fund is a more reasonable award of attorney's fees, the award to

5   each Class Member will be a greater amount than the estimated $580.  Moreover, in addition to

6   this monetary result, Class Counsel achieved significant non-monetary results in the form of QLN

7   reclassifying its employees, which will benefit current and future workers of QLN.  This factor

8   supports granting an award of 28% of the Settlement Fund.  *See Vizcaino*, 290 F.3d at 1049

9   (affirming a district court's award of 28% of the settlement fund where "the court found that

10  counsel's performance generated benefits beyond the cash settlement fund," such as the defendant

11  "chang[ing] its personnel classification practices").

12       Second, there were significant risks of litigation.  As discussed above, continued litigation

13  was particularly risky here given the potential insolvency and bankruptcy of QLN.  Further, this

14  case involved legal uncertainties such as whether the class members were bound to arbitrate and

15  whether relevant exemptions applied under FLSA and the California Labor Code.  Accordingly,

16  this factor favors granting an award of 28% of the common fund.

17       Third, with respect to the quality of litigation, Class Counsel is experienced in wage and

18  hour law suits.  Prior to settlement, Class Counsel deposed QLN's 30(b)(6) witness, QLN

19  "provided extensive informal discovery in anticipation of mediation, including class data for

20  purposes of calculating damage," and QLN "provided extensive information concerning the

21  companies' and owners finances."  Mot. for Final Approval at 10, 20.  Class Counsel also engaged

22  in mediation with an experienced wage-and-hour mediator, Steve Rottman.  However, because the

23  parties were not involved in "significant motions practice" prior to reaching a settlement, the

24  Court finds that this factor does not weigh in favor of Class Counsel's request of 33.33% of the

25  Settlement Fund.  *Burden*, 2013 WL 3988771, at *5; *see also Monterrubio v. Best Buy Stores LP*,

26  291 F.R.D. 443, 457 (E.D. Cal. May 14, 2013) (rejecting class counsel's request for 33.33% of

27

9

28  Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

$400,000 common fund, and granting 25% of the common fund instead, where the case was pending for less than a year, there were no motions, and the parties engaged in only "informal discovery" prior to settlement). Rather, this factor weighs in favor of granting a more modest award of 28% of the common fund.

Fourth, Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery. Class Counsel bore the risk of litigation and Class Counsel was, to an extent, precluded from taking and devoting resources to other cases or potential cases, with no guarantee that the time expended would result in any recovery or recoupment of costs. This factor weighs in favor of granting an award of 28% of the common fund.

Fifth, an award of 28% is consistent with attorney's fees awards made in similar cases. "An attorney's fee award that is 28% of the common fund is consistent with, and within the range of, awards made in wage and hour cases by district courts in California." *de Mira*, 2014 WL 1026282, at *3. Indeed, this case is similar to *de Mira*, in which the Court granted an award of 28% of the common fund in a wage and hour suit. *Id.* at *4–5. Although Class Counsel in *de Mira* requested an award of 30% of the common fund, the Court found that an award of 28% of the common fund was more appropriate because Class Counsel "did not engage in motion practice before settlement, engaged in some written discovery, reviewed 1,700 pages of documents, and attended two depositions." *Id.* at *2–3. The Court in *de Mira* recognized, however, "that the significant risk and non-monetary results achieved by Class Counsel in the instant case warrant an upward departure from the 25% benchmark" to 28%. *Id.* Accordingly, because this case is similar to *de Mira*, the Court finds this factor weighs in favor of an award of 28%. *See id.*

Finally, cross-checking Class Counsel's requested fee with Class Counsel's lodestar supports the reasonableness of an award of 28% of the common fund. Here, Class Counsel reports attorney's fees in the amount of $177,200, representing 423.10 hours of work. Class Counsel asserts that this figure was calculated using the hourly rates that Class Counsel normally charges for class litigation, and is consistent with prevailing rates in this region. *See* ECF No. 56

10
Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS

1  ("Schwartz Atty's Fee Decl."), Ex. A; ECF Nos. 57, 58. Indeed, courts within this Circuit have

2  approved in other cases Class Counsel's reported hourly rates. *See, e.g.*, Schwartz Atty's Fees

3  Decl., Ex. B (approving Schwartz's hourly rate of $650/hour in *Boyd v. Bank of Am.*, Case No. 13-

4  CV-00561 (C.D. Cal. Jan. 19, 2016)); *id.*, Ex. E (approving Schwartz's hourly rate of $625/hour in

5  *Lee v. JPMorgan Chase & Co.*, Case No. 13-CV-00511 (C.D. Cal. Apr. 28, 2015)). In seeking

6  33.33% of the common fund, or $133,333.33, Class Counsel is not requesting their full lodestar

7  amount. *See* Mot. for Atty's Fees at 12–17. This supports granting Class Counsel's request of

8  33.33% of the common fund. However, the Court notes that it twice denied without prejudice

9  Plaintiffs' Motion for Preliminary Approval. *See* ECF Nos. 51, 43. Accordingly, because Class

10 Counsel was required to file two amended Motions for Preliminary Approval in order to correct

11 deficiencies identified by the Court, Class Counsel's recorded 423.10 hours is an overestimate of

12 the necessary hours spent working on this case. As discussed above, the Court finds that an award

13 of 28% reasonable under the circumstances of this case and adequately compensates Class

14 Counsel.

15 Considering all of the factors above, the Court finds that an award of 28% of the

16 Settlement Fund, or $112,000, is appropriate under the percentage-of-recovery method. The Court

17 believes that this amount adequately compensates Class Counsel for their work in this case.

18 Accordingly, Class Counsel is awarded $112,000 in attorney's fees.

### V.  Costs and Expenses

Class Counsel also requests reimbursement of their out-of-pocket expenses incurred to

21 prosecute this action in an amount of $13,699.10. The Settlement Agreement capped Class

22 Administration costs at $20,000, *see* Settlement Agreement ¶ 46, and Class Counsel seeks to

23 deduct $20,000 in Class Administration expenses from the common fund, *see* ECF No. 59-1, at ¶

24 8. However, Class Counsel's list of costs includes $679 of "additional class administration costs."

25 *See* Schwartz Final Approval Decl., Ex. 1. Class Counsel may not deduct an additional $679 of

26 "additional class administration costs" from the common fund as "litigation costs," thereby

circumventing the $20,000 cap in Class Administration costs that the parties agreed to in the Settlement Agreement. Thus, the Court will not award this $679 in "additional class administration costs."

The Court finds that the remaining litigation expenses were incidental and necessary to the effective representation of the Class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These necessary expenses included research, travel for court appearances, mediation, and consultation with outside bankruptcy counsel to discuss QLN's assets and create a security interest to guarantee recovery for the Class Members. *See* Schwartz Final Approval Decl., Ex. 1. Accordingly, Class Counsel shall recover costs and expenses of $13,020.10.

## VI. The Class Representative Awards are Reasonable

In evaluating whether representative plaintiffs are entitled to reasonable incentive payments, district courts "must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (alterations and ellipses in original) (quoting *Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998)).

The Ninth Circuit has established $5,000 as a reasonable benchmark award for representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947–48; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Here, there are two Class Representatives: Trevor Johnson ("Johnson") and Samantha Harmon ("Harmon"). Class Counsel seek $5,000 per named plaintiff. Class Counsel also seeks $1,000 for pre-settlement opt-in Plaintiff Sarah Engle ("Engle"). There are no objections to the incentive awards.

The Court finds Class Counsel's request reasonable in light of the *Staton* factors discussed above. Johnson and Harmon each estimate that they have spent over fifty hours in connection with this case. *See* ECF No. 39-5 ("Harmon Decl."), ¶ 5; ECF No. 39-6 ("Johnson Decl."), ¶ 7;

*see Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (granting $5,000 incentive award to each named plaintiff where the named plaintiffs estimated that "they spent between forty and fifty hours of their time helping to prosecute this case"). Moreover, Johnson and Harmon each worked as SuperCamp employees and they declare that, as a result of coming forward, they have "burn[ed] bridges" with their former employer and with co-workers. *See* Harmon Decl. ¶ 6–8; Johnson Decl. ¶ 8. Further, Class Members have significantly benefitted from the Class Representatives' involvement in this action. As stated above, QLN has agreed to make changes to its classifications of SuperCamp employees.

Thus, weighing all of the *Staton* factors, the Court concludes that Class Counsel's request for incentive awards of $5,000 for each Class Representative is reasonable. Moreover, Class Counsel's request for a $1,000 incentive award to plaintiff Engle is reasonable in light of the risk that Engle took in opting in prior to settlement, at a stage of the lawsuit in which others did not step forward. *See* ECF No. 39-1, ¶ 9.

## VII. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for final approval of the proposed class action Settlement. The Court GRANTS IN PART Class Counsel's motion for approval of attorney's fees, costs, and service awards. The Court awards $112,000 in attorney's fees to Class Counsel and approves $13,020.10 in litigation costs. The Court also awards Named Plaintiffs Johnson and Harmon $5,000 each, and awards $1,000 to pre-settlement opt-in Plaintiff Engle.

**IT IS SO ORDERED.**

Dated: February 27, 2017

_____
LUCY H. KOH
United States District Judge

13
Case No. 15-CV-05013-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS